## COBBS v. WIEDEMANN et al.

No. 24318. Feb. 5, 1935.

Tom Williams, Gus Rinehart, and J. A. Rinehart, for plaintiff in error.

Morrison, Morrison & Morrison, for defendants in error.

PER CURIAM. The facts in this case are simple. The controversy was submitted to the trial court upon an agreed statement of facts. In appears that in 1900 a patent was issued by the United States government to Johann H. D. Wiedemann conveying to him the southwest quarter of section 7, township 13 north, range 5 west; that under the Statutes of 1893, then in force in the territory of Oklahoma, the St. Louis, El Reno & Western Railway Company was granted a charter by the Secretary of the territory of Oklahoma, as a railway corporation; that on July 13, 1903, the said Johann H. D. Wiedemann and Catharina Wiedemann, his wife, executed to said railway corporation a warranty deed, which (except for signatures and acknowledgment) was in the following form:

"Know All Men by These Presents, that John H. D. Wiedemann and Catharina Wiedemann, his wife, of the county of Canadian in the Territory of Oklahoma, have this day, for and in consideration of the sum of five hundred dollars, to the said John H. D. Wiedemann in hand paid by the St. Louis, El Reno & Western Railway Company, a corporation, created, organized, and existing under and by virtue of the laws of the Territory of Oklahoma, granted, bargained, and sold, and by these presents do grant, bargain, and sell unto the said St. Louis, El Reno & Western Railway Company, its successors and assigns, the following described tract or parcel of land, situated in the county of Canadian in the Territory of Oklahoma, that is to say: A strip, belt or piece of land one hundred (100) feet in width, containing six & 75/100 (6.75) acres, and comprising that portion of the southwest quarter of section seven (7), township thirteen (13) north, range five (5) west, which is included between two lines

running parallel with, one line being fifty (50) feet distant northwesterly at right angles, and the other line being fifty (50) feet distant southeasterly at right angles from the center line of the above-named company's railroad as said center line is located, surveyed and staked out over and across said above-described quarter section of land, to wit: Beginning on the south line of said quarter section at a point ten hundred eighty-nine (1,089) feet east of the southwest corner thereof; thence along a three (3) degree curve to the left (radius 1910) feet in said center line a distance of ten hundred twenty-nine (1,029) feet to a point of tangent; thence north 17 degs. 31 mins. east (magnetis bearing) nineteen hundred nine (1,909) feet along said tangent to the east line of said quarter section at a point one hundred sixty-eight (168) feet south of the northeast corner thereof.

"To have and to hold the premises hereby conveyed, with all the rights, privileges, and appurtenances thereto belonging or in anywise appertaining, unto the said St. Louis, El Reno & Western Railway Company, its successors and assigns, forever.

"The said John H. D. Wiedemann and Catharina Wiedemann hereby covenant and agree that on the delivery hereof they are the lawful owners of the premises above granted, and seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrances and that they will warrant and defend the same in the quiet and peaceable possession of the said St. Louis El Reno & Western Railway Company, its successors and assigns forever, against all persons lawfully claiming the same."

The grantee in said deed thereafter constructed a railroad on the land described in the deed and used the same for a railroad track and right of way. On April 1, 1906, said railway company executed and delivered its trust deed covering its line of railroad property, corporate rights, etc., to secure the payment of its bonds; said company thereafter made default in payment of its bond, and the trust deed or mortgage was foreclosed in the United States Court for the Western District of Oklahoma. The special master commissioner, under the orders of said court, sold the property covered by the trust deed to M. E. Gaskill; said sale was confirmed and the commissioner executed a deed of conveyance to said Gaskill conveying to him each and all and every part and parcel of the property, privileges, and franchises of the railway company; said deed conveyed to Gaskill whatever title the railway company obtained by virtue of the deed executed on July 13, 1903, by John H. D. Wiedemann and wife. After the purchase by said Gaskill, he has removed from said

land all tracks, rails, and ties, and has salvaged and disposed of the same. Since the date of the order of sale in the foreclosure proceedings, no trains have operated over said land and the same has not been and is not now used as a railway or any part of a railway. Plaintiff obtained a quitclaim from M. E Gaskill under date of February 28, 1927. This action was brought by plaintiff against John H. Wiedemann and Catharina Wiedemann, who are devisees under the will of Johann H. D. Wiedemann, who, as John H. D. Wiedemann, executed the deed to the railway company to recover possession of the tract of land. Defendants by cross-petition prayed judgment quieting title in them.

The trial court found the issues against the plaintiff and quieted title in defendants in said tract of land. In this appeal, plaintiff presents the following propositions:

First. That the deed of conveyance executed by John H. D. Wiedemann and wife to the railway company, being in form a general warranty deed, passed an unconditional fee title to the railway company.

Second. That the facts stipulated do not show abandonment of the land on the part of the railway company.

Whatever may have been the proper construction of the deed mentioned under the decisions of the Supreme Court of Oklahoma at the time of the trial of the case, it appears that since the trial and since the filing of the briefs in this court, the questions raised have been fully considered by this court in Marland v. Gillespie, 168 Okla. 376, 33 P. (2d) 207. In that case this court held:

"A deed from a grantor to a railway company containing the sentence: 'The same being for a right of way for a railroad track as the survey thereof is now located and said grantee agrees to construct two grade crossings over its track for the use of grantor, and proper water ways under its track where there is heavy fills,' but not otherwise limited, conveys a fee-simple title; such sentence not being a limitation upon the quality of the estate conveyed."

Section 1002, Statutes of Oklahoma Territory of 1893 (section 11907, O. S. 1931), authorized the formation of a railway corporation for the purpose of constructing a railroad in the territory of Oklahoma, with power under the provisions of section 1010 of said statutes (section 11913, O. S. 1931) to acquire the fee-simple title to land by voluntary deed. The grantee in said deed of July 13, 1903, was incorporated under the laws mentioned, and acquired title to

the 6.75 acres of land under the authority of section 1010, supra; the deed itself contained no limitation upon the quality of the estate conveyed. Therefore, since the law authorized the railway company to acquire the fee-simple title, and the deed contained no limitation upon the quality of the estate conveyed, we hold that the deed conveyed the fee-simple title. It follows that under the decision in Marland v. Gillespie, supra, the title conveyed to the railway company is now vested in plaintiff, and upon the facts stipulated, judgment should be for plaintiff.

Because of the conclusion we have reached upon the question of the quality of the estate conveyed by the deed of July 13, 1903, it is unnecessary for us to discuss and determine the question of abandonment of the tract of land for railroad purposes.

The judgment is reversed and cause remanded.

The Supreme Court acknowledges the aid of Attorneys C. J. Davenport, Kenneth H. Lott, and J. E. Thrift in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. C. J. Davenport and approved by Mr. Lott and Mr. Thrift, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BAYLESS, PHELPS, and GIBSON, JJ., concur.