### CUNEO et al. v. CHAMPLIN REFINING CO. et al.

No. 25665.  Sept. 29, 1936.

Rehearing Denied Nov. 17, 1936.

Roger Stephens and Fred L. Hoyt, for plaintiff in error.

E. E. Blake, for Knoell, Knoell and Ivy.

Scarritt & Champlin, for defendant in error Champlin Refining Company.

Lee B. Thompson, for Hall & Briscoe, Inc.

BUSBY, J.  This case involves the ownership of the oil and gas rights under a portion of the right of way of the St. Louis-San Francisco Railway Company in Oklahoma City, Okla.

The dispute is between the present owners of adjacent property and the heirs of the former owner of the entire property who originally granted the railway a right of way easement. The deeds through which the adjacent property owners claim did not specifically grant to them the fee under the right of way. Neither did such deeds preserve such qualified fee to the original grantor and his heirs.

We are chiefly concerned with the legal force and effect of the various conveyances in so far as the legal questions relating to such conveyances are not removed from our consideration by agreement or admission of the parties to this litigation. A proper consideration of this case requires that we deal

more specifically with the particular facts involved.

On April 4, 1898, Valentine F. Knoell had entered upon and was in possession of the following described property under the national homestead law: Southeast quarter of section 3, township 11 north, range 3 west of the Indian Meridian, in Oklahoma county. On the date last above mentioned he conveyed to the St. Louis & Oklahoma City Railroad Company a right of way easement 100 feet in width and extending in an easterly and westerly direction across the land. The right of way easement was subsequently conveyed to the St. Louis-San Francisco Railway Company. The right of way was so located that it divided the land owned by Knoell into two tracts. The tract south of the railway contained about 104 acres. The north tract contained about 50 acres.

On February 19, 1903, Knoell, by warranty deed in which his wife joined, conveyed the north tract to the St. Louis-San Francisco Railway Company. The purpose of the railroad company in purchasing this property was to construct a round-house thereon and make other uses thereof incidental to the operation of the railroad. The deed described the premises conveyed as follows:

"Commencing at the northeast corner of said quarter section and running thence westerly and along the north line thereof to the northwest corner of said quarter section; running thence southerly and along the west line of said quarter section to the right of way of the St. Louis and San Francisco Railroad; running thence easterly and along the north line of said right of way to the east line of said quarter section; running thence northerly and along the said east line to the place of beginning. **It being the intention of the grantors herein to convey all that portion of said quarter section lying north of and adjoining the right of way of the said railroad, as now located and constructed,** together with all improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same." (Emphasis ours.)

Immediately after the foregoing warranty deed was executed—to be exact, on April 1. 1903—the United States issued patents to the quarter section of land to Knoell. The foregoing deed to the railway company does not purport to limit as an easement for railway purposes the interest acquired by the railway company to the north 50-acre tract. While the question is not involved in this litigation and need not be decided, it is quite possible that that deed operated to convey a fee-simple estate to the railway company. See Marland v. Gillespie, 168 Okla. 376, 33 P. (2d) 207. A question might have been raised that the deed also operated to convey the fee in one-half of the railway right of way subject to the easement formerly conveyed. However, that question has been eliminated by the railroad company, which as a party to this litigation has filed a disclaimer to any part or portion of the fee lying in or under the right of way.

In view of this admission on the part of the railway company, the condition of the title subsequent to the execution of the above-mentioned deeds was as follows: Valentine F. Knoell was the owner of the south tract, consisting of approximately 104 acres, and the owner of the fee in the railroad right of way, subject to the right of way easement. The title remained in this condition for several years. On May 2, 1907, Valentine F. Knoell, joined by his wife, executed and delivered a warranty deed which conveyed to Mary J. McMechan all of that portion of the quarter section lying south of the right of way. The land conveyed by the deed was described therein as follows:

"All of the southeast quarter (S. E. ¼) of section three (3), township eleven (11) north of range three (3) west of Indian Meridian, lying south of the St. Louis and San Francisco right of way, containing one hundred and four (104) acres, more or less, together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same."

An examination of the foregoing description discloses that no mention is made therein of that portion of the fee on which the right of way easement had been granted. It is neither specifically conveyed to the grantee nor specifically reserved by the grantor. The principal question in this litigation is whether this deed operated to alienate the fee of the property held by the railway company for right of way purposes. The grantor in the instrument did not retain any part or portion of the original quarter section of land owned by him across which the right of way had formerly been granted, unless he may be said to have retained the title to the fee to the land on which the railway right of way is situated.

Since the execution of the foregoing instruments there has never been any conveyance or attempted conveyance of the fee under the right of way back to either Knoell or his heirs. Thus the right of Knoell or his heirs to claim the oil and gas rights under

the right of way depends primarily upon the proposition that the deed from Knoell and his wife to Mary J. McMechan was ineffective and did not operate as a conveyance of the fee under the right of way. The subsequent disposition of the property by Mary J. McMechan or her grantees is immaterial unless it may be said to cast some light on the pre-existing intent of the respective parties at the time the warranty deed last above mentioned was executed. However, this case cannot properly be understood without a more complete statement of the facts as hereinafter detailed.

On April 24, 1908, approximately one year after she acquired the south tract, Mary J. McMechan platted a portion thereof creating Central addition to Oklahoma City. Block 23 of that addition consists of 24 lots. It is adjacent to the railway right of way with no intervening street or alley. The 24 lots of that block are platted so that they lie north and south. The back or north end of each lot borders on the right of way. Through mesne conveyances the ownership of these lots rested at the time this litigation was commenced in a number of different individuals. Louis J. Cuneo and Amelia A. Cuneo owned lots 6 to 11, inclusive. Joseph M. Beatty owned lots 13 to 15, inclusive. Burdeau Real Estate Company, a corporation, owned lots 4 and 5. Robert Lewis Felker and Opal G. Felker owned lots 1 to 3, inclusive, and C. E. Stout and Florence Stout owned lot 12 and lots 16 to 24, inclusive.

On January 30, 1930, the Cuneos leased their six lots to Estella F. Grace for oil and gas purposes. On May 10, 1930, the Stouts leased their ten lots to the same lessee. Later the Stouts took the position that this lease had been forfeited for nonpayment of rentals and executed another lease to the Gulf Production Company, a corporation. On December 10, 1930, the Felkers leased their three lots to the Gulf Production Company, a corporation. On January 10, 1931, the Champlin Refining Company and Hall & Briscoe, Inc., having acquired an interest through the Grace leases, applied to the administrative authorities of Oklahoma City for a permit to drill a well on the block. Their application was granted by the board of adjustment on January 26, 1931, and from the order granting the permit the Gulf Production Company, a corporation, prosecuted an appeal to the district court. Thereafter the Stouts, assuming the position that their former lease to Grace had lapsed for nonpayment of rentals, executed another lease to the Gulf Production Company, a corporation, as previously mentioned.

On March 11, 1931, the heirs of Knoell leased or attempted to lease a portion of the Frisco right of way to Hall & Briscoe, Inc. The lease thus executed contained the following provision:

"It is further agreed by and between each and all of the parties hereto that the joining in the execution hereof, by any party as lessor shall not be construed as an admission by such party of the legality of any claim which may be made by another party lessor to the particular tract of land claimed by the party executing this agreement, and that the execution hereof shall in no wise prejudice the rights or claims of any lessor as against the rights or claims of any other lessor to the particular tract of land claimed by them.

"It is further agreed that said lessee shall not use or have the right to use the surface of the real estate above described, and hereby leased, in any manner whatsoever that may or could interfere with the present possession of said real estate, it being the intention of the parties hereto that no well shall be actually drilled thereon, but that said real estate shall be included in said consolidated leases and shall participate in the royalty therefrom."

On March 26, 1931, the Gulf Production Company applied to the board of adjustment of Oklahoma City for a permit to drill upon the block. Its application for permit was denied and an appeal taken to the district court of Oklahoma county. There the appeal was consolidated with the appeal from the order granting the Champlin Refining Company and Hall & Briscoe, Inc. the permit to drill. On hearing of the consolidated matter, the Gulf Production Company prevailed and the district court ordered that a permit issue to it. Champlin Refining Company and Hall & Briscoe then appealed to this court. While the appeal was pending herein an agreement was entered into between the respective parties pursuant to which the Gulf Production Company assigned its lease to the Champlin Refining Company and Hall & Briscoe. The appeal was dismissed, and on December 18th the district court vacated its former judgment and ordered the permit issued to the Champlin Refining Company and Hall & Briscoe. A well was then drilled upon the block by the last-named parties.

On the 15th day of December, 1932, this suit was instituted in the district court of Oklahoma county by Louis J. Cuneo, Amelia A. Cuneo, Joseph M. Beatty, Burdeau Real

Estate Company, a corporation, Robert Lewis Felker, Opal G. Felker, C. E. Stout and Florence Stout, as plaintiffs, against Champlin Refining Company, a corporation, Hall & Briscoe, Inc., a corporation, Kessler Oil & Gas Company, a corporation, Gulf Production Corporation, a corporation, Oscar John Grace, Estella F. Grace, W. G. Phillips, Gasena Nagora, nee Knoell, Valentine G. Knoell, Katherine Knoell, W. H. Ivy, St. Louis-San Francisco Railway Company, a corporation, and J. M. Kurn and John G. Lonsdale as receivers of St. Louis-San Francisco Railway Company, a corporation, as defendants, for the purpose of determining which of the two groups of claimants to the reversion of the railroad right of way contiguous to block 23 is entitled to participate in the royalty on the well drilled in said block by reason of the ownership of the fee in and under the land occupied by the railway company for railway purposes.

It is apparently conceded by all of the parties to this litigation that whoever owns such fee is entitled to participate in the oil and gas produced, regardless of the fact that the surface is now used and occupied for railway purposes. The legal questions, if any, that might be raised by reason of the occupancy of the surface are eliminated from this litigation by concession of the parties.

The district court of Oklahoma county, after a hearing in which the foregoing facts were developed either by evidence or by stipulation of the parties, decided the matter in favor of the heirs of Knoell and their assigns, the original owners of the tract and the grantor in the deed of easement to the railway company. The decision was based upon the theory that Knoell had never conveyed or alienated the fee under the right of way.

The heirs of Knoell and their assigns in presenting the case to this court urge that the judgment may well be sustained upon another ground, namely, that by reason of the various contracts executed in connection with the leasing of this property and the judgment granting a permit to drill an oil and gas well thereon based indirectly upon such contracts and the failure of the adjacent property owners to urge their claim at an earlier date, such owners of the adjacent property are now estopped to assert ownership to the land occupied by the railway company.

This argument is not sound. The owners of the adjacent property are not attempting to assert their claim against anyone who in reliance upon their former acts and conduct has parted with money or suffered detriment. They are not attempting to prevent the lessees who have drilled the well from obtaining their proper proportionate share of the oil and gas produced from the same. Neither are they attempting to obtain any greater proportion of the oil and gas produced from the premises than they would be entitled to under the lease executed thereon. Their claim is adverse only to the heirs of Knoell and their assigns who have parted with nothing in the matter, except, of course, their time and labor in asserting their own claim and presenting the litigation. Estoppel is an instrumentality recognized in equity for the protection of persons who would be injuriously and unconscionably affected by the assertion of a claim contrary to a position previously taken by a party to be estopped. It is a doctrine available for the prevention of a wrong. It is not, however, a vehicle to be used to obtain a positive gain. It might, under the circumstances of this case, be available to protect the Champlin Refining Company, or Hall & Briscoe, if they were injurious'y affected by a recognition of the claim of adjacent property owners. It is not, however, available to the Knoell heirs for the purpose of gratuitously vesting in them a title to property which they never had, if, under the law, their claim is otherwise groundless. Noble et al. v. Johnson, 145 Okla. 46, 291 P. 26; Williams v. Edwards, 163 Okla. 246, 22 P. (2d) 1026.

In connection with the effect of the former judgments granting permits as determining the rights of the parties, it is only necessary to observe the specific terms and provisions of the judgments themselves. Neither of such judgments adjudicated or purported to adjudicate the property rights of the parties now in dispute. In fact both of such judgments expressly excluded such adjudication. In the judgment of the district court entered on July 15, 1931, which was vacated after settlement pending appeal, it was provided:

"It is further ordered, adjudged and decreed that the rights of any parties claiming any interest in the railway right of way are not determined or affected by this decree."

In the latter judgment, subsequently entered on December 18, 1931, after the settlement pending appeal, it was provided:

"It is further ordered, adjudged and decreed that the court does not attempt to define or adjudicate the right or interest of

any party or parties claiming any interest in or to the railway right of way tract which adjoins said drilling area on the north, which right of way is included in said drilling area for the purpose of granting a permit thereon."

The effect of such a reservation or exclusion in the judgment was to prevent the judgment from becoming res adjudicata upon the rights of parties in the matter thus excluded. It left the matter open for future adjudication in subsequent appropriate litigation. Billy v. LeFlore County Gas & Elec. Co , 146 Okla. 227, 293 P. 1009; Bellamy v. Washita Valley Tel. Co., 25 Okla. 792, 108 P. 389; 34 C. J. 896, 797; Hardin v. Hardin (S. D.) 129 N. W. 108.

Furthermore, it would not have been proper in that litigation which consisted of an appeal from the board of adjustment to have adjudicated a dispute over the title to property. Reinhart & Donovan Co. v. Refiners' Production Co., 175 Okla. 522, 53 P. (2d) 1116.

Thus the judgment of the district court now being reviewed cannot be supported upon the ground of estoppel or res adjudicata. This brings us to a consideration of whether it should be sustained upon the theory that Knoell had never alienated the land occupied by the railroad company.

This case then reverts to a consideration of the force and effect of the deed given by Knoell to Mary J. McMechan. The grantor in that deed did not after its execution retain any part of the original tract lying on either side of the right of way. In the deed he neither expressly conveyed nor reserved the land burdened by the right of way. Did the deed operate as a conveyance of the fee of the tract occupied by the railroad? The parties assert that the question is one of first impression in this jurisdiction.

The prevailing view in other jurisdictions is that the grantor of land abutting upon a railway who retains in himself no part of the land on either side of the railway property is presumed to have conveyed his interest in the railway property, unless a contrary intention appears or is clearly expressed. A number of reasons have been given for this attitude on the part of the law. They are: That the existence of narrow strips of land distinct in ownership from the adjoining territory would create a prolific source of litigation; that the law favors a construction of instruments which avoids such a situation; that the law will presume the grantor had no intent to retain property then burdened with a railway use and therefore having no immediate

value to him; and that the presumption should be indulged because the ownership of the fee under the railway carries with it valuable rights appurtenant to the property expressly conveyed. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S. W. (2d) 1080, 85 A. L. R. 391: Roxana Petroleum Corp. v. Sutter, 28 Fed. (2d) 159. The question is annotated in 85 A. L. R. page 404, and analogous questions relating to conveyances bordering on highways are annotated in 2 A. L. R. 6 and 47 A. L. R. 1276.

Roxana Petroleum Corp. v. Sutter, supra, involves an application of the rule to a situation quite similar in essential respects to the one herein presented. The reasoning is so well stated therein that we quote at length:

"Counsel for the Roxana Corporation further contend that, when the owner conveys a tract of land abutting on a railroad right of way tract, in which such grantor owns the servient estate and the railroad the dominant estate for right-of-way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated. This rule finds support in the following authorities: Center Bridge Co. v. Whee'er & Howes Co.. 86 Conn. 585, 86 A. 11; Wright v. Willoughby, 79 S. C. 438, 60 S. E. 971; Foster v. Foster, 81 S. C. 307, 62 S. E. 321; Boney v. Cornwell, 117 S. C. 426, 109 S. E. 271.; Richardson v. Palmer, 38 N. H. 212; Church v. Stiles, 59 Vt. 642, 10 A. 674.

"In the case of Bowers v. Atchison, T. & S. F. Ry. Co., 119 Kan. 202, 237 P. 913, 42 A. L. R. 228, the Supreme Court of Kansas held that a grant of land adjoining a public highway, in which the grantor owned the servient estate, carried with it the fee to the center of the highway, notwithstanding the description in the deed did not mention the highway as a boundary and the specific description by metes and bounds in the deed, carried the grant only to the adjacent boundary line of the highway, and cited with approval Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33, where the New York court applied the rule to a simi'ar description in a deed. In giving the reason for the rule, the Kansas court said: 'Experience revealed that separate ownership of long, narrow strips of land, distinct from the territory adjoining on each side, was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore, it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated.'

"In stating the rule for construing the description in such deeds, the Kansas court

further said: 'Defendant says Baldwin's deed disclosed no intention to convey half of the highway. This is not the interpretative test. The test is whether the deed expressed intention to exclude half the highway from the grant.'

"See, also, Tousley v. Galena Mining & Smelting Co., 24 Kan. 328; Challiss v. Depot & R. Co., 45 Kan. 398, 25 P. 894; A., T. & S. F. Ry. Co. v. Patch, 28 Kan. 470; Paine v. Consumers' F. & S. Co. (C. C. A. 6) 71 F. 626.

"Mr. Justice Taft, then Circuit Judge, in Paine v. Consumers' Co., said: 'The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases.'

"The decision in Bowers v. Ry. Co., supra, shows that Kansas has adopted the general rule upon this subject, and for the same reason assigned in Paine v. Consumers' Co., supra. While Kansas has not, so far as we are able to determine, applied the rule to a conveyance of land abutting on a railroad right of way, it seems to us that the reason for the rule is equally applicable to a deed of land abutting on a railroad right of way as to a deed of land abutting on a public highway. The same narrow strip exists. It is seldom of any present value to the grantor. It is likely to be productive of disputes and litigation. The litigation in the present case is a striking example thereof.

"It is therefore our conclusion that Blank in his deed to Lyman conveyed not only the land abutting upon the railroad right of way, but also the servient estate in that portion of the land conveyed to the railroad company for right of way purposes, and that such servient estate passed with the other land by mesne conveyance to Louie Fritz, the present owner."

Counsel for those who claim through Knoell forcefully urges that the legal antipathy to the existence of strips and gores should not influence our judgment in this case because the individual property of the adjacent owners is now less in area than the right of way strip involved herein. In making this argument counsel overlooks the important fact that the lots were not platted at the time the conveyance from Knoell to McMechan was made. So far as we are informed by the briefs, that convey-

ance was not made in contemplation of subsequent platting of the property. The platting did not take place until about a year later. We must judge the effect of a conveyance by the situation existing at the time it was made. At that time the tract conveyed consisted of 104 acres, much greater in area than the strip now claimed through Knoell. Furthermore, as disclosed by the authorities cited supra, the rule does not rest solely on the adverse attitude of the law toward strips and gores.

We conclude that the conveyance from Knoell to McMechan not only conveyed the 104-acre tract therein specifically described, but it also conveyed by implication the fee burdened with the railway right of way adjacent thereto, thus eliminating the asserted rights of those claiming through Knoell.

Counsel also call our attention to Marland v. Gillespie, 168 Okla. 376, 33 P. (2d) 207; Hunzicker v. Kleeden, 161 Okla. 102, 17 P. (2d) 384, and Cobbs v. Wiedemann, 170 Okla. 493, 40 P. (2d) 1075. We have examined those cases as well as the more recent case of Higgins v. Classen, 176 Okla. 233, 55 P. (2d) 101, and find nothing therein inconsistent with the views herein expressed. The latter case is governed by the peculiar circumstances therein reviewed, which readily serve to distinguish it from the case at bar.

This cause is reversed, with directions to proceed in a manner not inconsistent with the views herein expressed.

RILEY, BAYLESS, PHELPS, and CORN, JJ., concur. McNEILL, C. J., OSBORN, V. C. J., and GIBSON, J., dissent. WELCH, J., absent.