GUTENSOHN v. McGUIRT et al.

No. 30886. April 4, 1944.

147 P. 2d 777.

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, Paul E. Gutensohn, of Fort Smith, Ark., and J. Walter Long, Jr., of Okemah, for plaintiff in error.

James C. Wright and Glenn R. Watson, both of Okemah, for defendants in error.

RILEY, J. This is an appeal from a judgment and decree in an action to quiet title. The action was commenced by Cora McGuirt, Clarence McGuirt, Addie B. McGuirt Walker, Clifton McGuirt, Katie McGuirt, Lora McGuirt Graham, Hugh McGuirt, and Violet McGuirt, heirs at law of W. H. McGuirt, deceased. Cora McGuirt is the widow, and the other plaintiffs are children of W. H. McGuirt, deceased. The land involved is the southwest quarter of the southeast quarter of section 21, township 12 north, range 8 east, in Okfuskee county. There were a number of defendants. All defendants except E. F. Gutensohn defaulted, and the judgment of the district court became final as to them.

The land was a part of the allotment

of Sam Grayson, an enrolled Creek freedman citizen. Plaintiffs deraign their title by deed from Sam Grayson and wife to Isaiah Hampton, dated February 27, 1904; deed from Hampton and wife to R. G. Gray, dated March 9, 1908; and deed from R. G. Gray to W. H. McGuirt, dated February 22, 1909; and inheritance from W. H. McGuirt. They allege that W. H. McGuirt and family went into possession and occupied and used said land as their homestead until the death of W. H. McGuirt in 1916. They further allege that they are the heirs at law of the said W. H. McGuirt, deceased.

The only part of said land in controversy as between plaintiffs and Gutensohn, hereinafter referred to as defendant, is a strip formerly used and occupied as a part of the right of way of the Fort Smith & Western Railroad Company, containing 9.57 acres, and another tract not a part of said right of way, containing 9.32 acres, described by metes and bounds.

As to the latter tract, defendant claims under a deed by Cora McGuirt, Clarence McGuirt, and Addie McGuirt to D. J. Turner, dated January 20, 1919; deed dated February 13, 1919, by D. J. Turner to E. F. Gutensohn, trustee; that Gutensohn took and held said land as trustee for the Fort Smith & Western Railroad Company until about July 25, 1939, when it was sold by a special master under a decree in a foreclosure proceeding in the District Court of the United States, to Schiavone-Bonomo Corporation; deed from said corporation to Benjamin Schwartz, dated December 26, 1939; and deed from Benjamin Schwartz to defendant, as an individual, dated March 5, 1940.

As to the strip or tract formerly comprising a part of the right of way of the Fort Smith & Western Railroad Company, defendant claims title by virtue of an alleged deed of conveyance by Sam Grayson and wife to the Fort Smith & Western Railroad Company, dated February 8, 1902; the deed above mentioned from the special master in the foreclosure proceeding to Schia-vone-Bonomo Corporation; deed from said corporation to Schwartz, and the deed from Schwartz to defendant as an individual.

All the above mentioned instruments, or recorded copies thereof, were introduced in evidence. There is no question as to the execution of any of them.

The record shows that W. H. McGuirt died intestate on or about April 20, 1916; that he left surviving him his widow, Cora McGuirt, and eight children; that one child died in 1930 without having been married. The widow and the seven children of W. H. McGuirt are the plaintiffs in this action.

The court found and held for plaintiffs as to the right of way tract and quieted their title thereto. As to the other tract, containing 9.32 acres, the court found and held that the widow, Cora McGuirt, and two children, Clarence and Addie B. McGuirt, had full right to convey their interest in said land at the time of the execution of the deed to D. J. Turner; that said deed conveyed an undivided one-half interest in the 9.32 acre tract to Turner, and that defendant was the owner of said one-half interest. In accord with the prayer of plaintiffs, the court decreed partition as to the 9.32 acre tract, and defendant appeals.

The first contention is that the railroad company obtained and held an absolute fee-simple title to the right of way (9.57 acres) under and by virtue of the deed from Sam Grayson and wife dated February 8, 1902. Said instrument, after stating the parties as Sam Grayson and Angie Grayson, wife of Sam Grayson, as parties of the first part, and the Fort Smith & Western Railroad Company, a corporation, as the second party, recites that second party has, under Act of Congress approved March 3, 1899, surveyed its line and route and located its right of way as the same as staked out over and across the 40 acres here involved, states:

"Now, therefore, in consideration of the sum of $92.00 paid by the second party to the first party, receipt where-

of is hereby acknowledged, the first party does hereby grant, bargain, sell and convey unto the second party, its successors, and assigns forever, said strip of land and right-of-way, and hereby acknowledges full satisfaction for all damages done the first party by the taking of said right-of-way and the use thereof for the construction and operation of a railroad thereon, and the first party in consideration of said payment covenants and agrees to and with the second party that said first party is the lawful owner of said strip and right-of-way and is the actual occupant thereof, and has a good right and title to convey the same and to receive payment therefor; that no other person or persons whatsoever have any lawful right or claim to the same and that said first party does hereby warrant and defend to and in the second party the right to said strip and the right-of-way aforesaid against the lawful claim of any and every person or persons whatsoever.

"And I, Angie Grayson, wife of said Sam Grayson, for the consideration and purposes aforesaid do hereby quitclaim, release and relinquish unto the said Fort Smith & Western Railroad Company, its successors and assigns, all my right, title and possibility of dower in and to the aforesaid property.

"Witness our hand and seal this 8th day of Feby. 1902.

Sam Grayson
Angie Grayson"

"Witnesses:
"M. B. Castle
"A. R. Stinnett"

The instrument does not show approval by the Secretary of the Interior. To support his contention, defendant cites and in part relies upon Cooke v. Kinkead et al., 179 Okla. 147, 64 P. 2d 682; Marland v. Gillespie, 168 Okla. 376, 33 P. 2d 207; Cobbs v. Wiedemann et al., 170 Okla. 493, 40 P. 2d 1075; and Higgins et al. v. Oklahoma City, 191 Okla. 16, 127 P. 2d 845. All these cases are to the effect that every estate in land granted shall be deemed an estate in fee simple unless limited by express words. Under the above authorities, the instrument relied upon is apparently sufficient as to form to convey fee-simple title; but in the cases above mentioned involving title to land acquired by railroad companies for railroad purposes, it is pointed out that the railroad companies were authorized by law to acquire by purchase such real estate as might be necessary for the construction, maintenance, and operation of their railroads, and to sell same when no longer necessary for their use. The authority therefor is section 1010, O. S. 1893; section 1022, O.S. 1903; section 1382, Rev. Laws 1910; section 5483, C. O. S. 1921; subdivision 3, section 11913, O. S. 1931; subdivision 3, section 7, Title 66, O. S. 1941. Said law has no application to the railroad company or the land here involved for the reason that at the time the deed in question was executed the land was not within Oklahoma Territory.

The authority for the Fort Smith & Western Railroad Company to acquire right of way and construct and operate a railroad through the Creek Nation was the Act of Congress of March 3, 1899, 30 St. at L. 1368.

Section 2 of said act provides:

"That said corporation is authorized to take and use for all purposes of railway and telegraph and telephone line, and for no other purpose, a right of way one hundred feet in width through the said Choctaw and Creek nations for the said Fort Smith and Western Railroad Company, the same to be fifty feet on either side of the track of said railway from the center thereof, and, in addition to the above right of way, to take and use a strip of land one hundred feet in width, with a length of two thousand feet, for station purposes to the extent of one station for each ten miles of road, with the right to use such additional grounds where there are heavy cuts or fills as may be necessary for the construction and maintenance of the roadbed and track, not exceeding fifty feet in width on each side of the said right of way, or as much thereof as may be included in said cut or fill: Provided, That no more than said addition of land shall be taken for any one station: Provided further, That no part of the lands herein authorized to be taken shall be leased or sold by the company, and they

shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railroad, telegraph, and telephone lines, and when any portion thereof shall cease to be so used, such portion shall revert to the Choctaw Nation or Creek Nation."

First, it may be noted that under the second proviso in said section, it is expressly provided that no part of the lands authorized to be taken shall be leased or sold by the company and they shall not be used except in the manner and for such purposes only as shall be necessary for the construction and convenient operation of said railroad, telegraph and telephone lines, and when any portion thereof shall cease to be so used, such portion shall revert to the Choctaw Nation or Creek Nation. There was no specific grant of authority for the railroad company in any case to acquire fee-simple title to the land it proposed to use as a right of way through the Creek Nation. It is apparent that it was the intention of Congress that no such title could be acquired.

It therefore appears that the Fort Smith & Western Railroad Company did not have authority to acquire fee-simple title to the land belonging to the Creek Nation over which it was authorized to obtain a right of way, and that said instrument, in so far as it purports to convey fee-simple title, was a nullity.

Defendant contends that, in the absence of any allegation or proof to the contrary, it is presumed that the Secretary of the Interior approved the deed from Sam Grayson and wife to the Fort Smith & Western Railroad Company, and in support of said contention cites United States v. Fort Smith & Western Railroad Co., 195 Fed. 211, and St. Louis & San Francisco Railroad Co. v. Skelton, 42 Okla. 266, 114 P. 440. These cases are not controlling for the reason that the approval by the Secretary of the Interior could not make the deed convey fee-simple title where the grantee had no power to take fee-simple title.

. It is next contended that plaintiffs were estopped to deny or challenge the validity of the deed from Sam Grayson to the railroad company because the deed from Sam Grayson and wife to Isaiah Hampton, through whom plaintiffs claim title, was made "subject, however, to the right of way of the Fort Smith & Western Railroad." In support of this contention, defendant cites Williamson v. Davis, 74 Okla. 174, 177 P. 567, which holds:

"Where one purchases property and accepts a deed thereto which conveys the same to him subject to a lease thereon held by another, he cannot deny or dispute the right to said lease thus recognized by the provisions of said deed."

To the same effect is Nation v. Planters & Mechanics Bank, 29 Okla. 819, 119 P. 977. The rule there stated would estop plaintiffs only to deny the right to use the land as a right of way to the extent that the law authorized such use. Plaintiffs do not deny that the railroad company at one time had the right of way and the right to occupy and use said land as such. The record discloses that in 1939 the railroad company entirely abandoned said tract of land and the use thereof and removed its rails and other equipment therefrom, and never used the same as a right of way for railroad purposes, telegraph or telephone lines, after 1939. When the railroad company ceased to use said land for the purposes stated in the act, its rights ceased to exist and it had no right to transfer the title to said land to any one else. Hampton took the land subject to the interest the railroad company actually had under the law. These were the rights conferred by the Act of Congress, and no more.

The third proposition is that the court was without jurisdiction or power to determine the heirs of W. H. McGuirt, deceased, and partition the land. Plaintiffs' amended petition, under which the case was tried, after deraigning the title down to W. H. McGuirt, alleged:

"That W. H. McGuirt and family continued to reside upon said land, taking and receiving all the rents and profits therefrom, until the death of W. H. Mc-

Guirt, which occurred in the year 1916, and at the time of his death the land was occupied by him and his family as a homestead. That Cora McGuirt, one of the plaintiffs herein, is the widow of W. H. McGuirt and the other plaintiffs are his children and that the widow has continued to occupy said land from the date of death of W. H. McGuirt until the present time and now occupies same. That W. H. McGuirt left surviving as one of his heirs, Murray McGuirt, a son, but that Murray McGuirt departed this life in the year 1930, unmarried, intestate and without issue."

It thus appears that before the court could decree title to the land in question to plaintiffs, it was necessary to determine whether plaintiffs were in fact the heirs at law and the only heirs at law of W. H. McGuirt, deceased. At the trial there was introduced in evidence what plaintiffs say in their brief was the entire file in the matter of the estate of W. H. McGuirt, deceased, in the county court of Okfuskee county, Probate No. 1037. This evidence disclosed that on the 12th day of May, 1916, there was filed in regular form the petition of Cora McGuirt for letters of administration of the estate of W. H. McGuirt, deceased; an order of the same date setting hearing of said petition for May 24, 1916, and for notice thereof as required by law; proof of posting and mailing such notice; and an order of May 24, 1916, appointing an administratrix, which order is as follows:

". . . It is Ordered, That Cora McGuirt be and hereby is appointed administratrix of the Estate of said W. H. McGuirt, deceased, and that letters of Administration issue to said Cora McGuirt upon her taking and subscribing the oath required by law, and executing a bond to the State of Oklahoma, in the sum of Seven hundred fifty ($750.00) Dollars, with sureties approved by the Judge of said Court as required by law.

"T. H. Wren, County Judge."

"Seal"

—letters of administration and oath of Cora McGuirt as administratrix, in due form, dated May 29, 1916. There is no record of her discharge or that anything

more was done under said letters of administration. Cora McGuirt was a witness and in part testified as follows:

"Q. Was there any administration—probate of your husband's estate? A. Yes; I was administratrix. Q. You understand what I mean? Did your husband leave a will? A. No, he didn't leave a will. Q. Did you have proceedings in county court in which his heirs were determined? A. Yes. Mr. Hanson: We object, then, court please, to determining the heirs in this action. A. (By witness) I don't know for sure. The Court: Q. Was an administrator appointed after his death, in the county court of this county? A. Yes. Q. Who was the administrator? A. Myself. Q. You were the administratrix? A. Yes. Mr. Watson: Court please, the record will show she was appointed administratrix and no further proceedings were had. There was no determination of heirs. The Court: I just wanted to know if she had been appointed administratrix. The Witness: Yes, I was appointed administratrix. Mr. Hanson: That is all."

Thereupon defendant objected to further proceedings to determine heirship in the case. The objection was overruled.

In Sims v. Hendricks et al., 172 Okla. 532, 45 P. 2d 746, it is held:

"Where proceedings for the administration of an estate are pending in the county court having jurisdiction of the settlement thereof; and where thereafter an action has been filed in the district court to determine the heirs and to partition the real estate; and where a motion is filed in said action in said district court by the administrator of such estate to dismiss said action on the ground that the commencement of the administration proceedings in the county court operated in effect to withdraw from the district court its jurisdiction to partition the lands and determine the heirs, held, it was not error to sustain said motion to dismiss for the reason that such an action in the district court would interfere with the orderly administration proceedings pending in the county court."

In State ex rel. Morrell v. Worten, District Judge, 161 Okla. 130, 17 P. 2d 424, it is held:

"Where administration proceedings of the estate of a deceased full-blood Osage Indian is pending in the county court having jurisdiction of settlement thereof, and a period of three years or more years has not elapsed since the death of the intestate without there having been a decree entered in the county court of competent jurisdiction judicially determining the heirs of the deceased, and a district court attempts to determine the heirs of the deceased and to partition real estate belonging to the estate among those heirs, notwithstanding the fact that the attention of the district court has been called to the proceeding in the county court, the district court is without authority to determine the heirs and partition the real estate belonging to the estate, and this court, in a proper proceeding, will prohibit the district court from proceeding further in the matter."

Defendant asserts that because the record discloses that W. H. McGuirt died in 1916, and letters of administration were issued on May 29, 1916, and that nothing further was done, the administration proceedings were abandoned. No authority is cited in support of the claim of abandonment of administration proceedings.

In 21 Am. Jur. 453, the following general rule is stated:

"As a general rule, the authority of an executor or administrator continues until the estate is settled and he is finally discharged, unless his executorship or administratorship is sooner revoked by the court, or is terminated by his resignation, where the statutes permit executors or administrators to resign their trust, or the court, in the absence of such statute, accepts the resignation, or by his removal from office, his subsequent insanity or mental incompetency, or his death."

In Johnston, Adm'r, etc. v. Schwenck, Adm'r, etc., 99 Ohio St. 59, 124 N. E. 61, 8 A.L.R. 170, it is held:

"The filing of an account in the probate court by an executor or administrator, denominated 'final account,' does not operate to terminate the trust, as long as there remains assets under his jurisdiction subject to the payment of valid debts of the decedent, and the fail-

ure of the fiduciary to proceed with the administration of the trust, which, under some circumstances, may justify a removal of the officer, does not constitute, ipso facto, an abandonment of the trust."

Thereunder it cannot be held that the administration proceedings in this case were abandoned. Sims v. Hendricks, supra, and State ex rel. Morrell v. Worten, District Judge, supra, are distinguishable and not controlling for the reason that in each of said cases proceedings to determine heirship in the district court were commenced before the expiration of three years from the date of the death of the intestate and the district court could have no jurisdiction under section 1, chapter 261, Session Laws 1919, referred to in the briefs as House Bill No. 445, section 257, Title 84, O. S. 1941.

As applied to real property, where the owner dies intestate, said section in substance provides that where any person dies intestate possessed of real property in this state and a period of three years or more since the death of such intestate has elapsed without there having been a decree by the county court having jurisdiction to administer upon his estate, wherein it was judicially determined who, by name, are or were all the particular persons entitled to participate in the distribution of such real property under the law of succession, the name and individual identity of each and all persons who take or were entitled to take immediately under the law of succession may be judicially determined and jurisdiction thereto invoked in the manner provided in said section.

This may be done in any action which relates to or the subject matter of which is such real property, or for the determination in any form of any interest, right, title or estate therein or in which the relief demanded consists wholly or partly in excluding the defendants or any of them from any interest, right, title or estate therein.

Plaintiffs contend that under the rule

stated in Homer v. Lester et al., 95 Okla. 284, 219 P. 392, the district court had jurisdiction to determine the heirs, notwithstanding the pendency of the administration proceedings in the county court. Therein it is said:

"House Bill 445 becomes operative in every case where 'the period of three years or more years since the death of such intestate or testator has elapsed without there having been a decree of the county court of the county having jurisdiction to administer upon his estate, wherein it was judicially determined who the heirs are.'"

Under the rule there stated, and the rule stated in Simms v. Hendricks et al., supra, and State ex rel. Morrell v. Worten, District Judge, supra, and the facts in this case, it appears that both the county court and the district court had jurisdiction to determine the question as to who were the heirs of W. H. McGuirt, deceased. The failure of the county court to act for more than 25 years may not deprive it of jurisdiction to act. But after three years had elapsed from the date of the death of W. H. McGuirt, the district court also had power and jurisdiction in an appropriate proceeding to determine such heirship. The judgment and decree of the court first to exercise the power should prevail. Had the county court first entered a decree judicially determining who by name were all the particular persons entitled to participate in the distribution of the real property under the law of succession, such decree would have been final and binding upon the parties in the district court. On the other hand, the district court having first acted and entered its decree in said matter, its decree is final and binding upon the parties and becomes res judicata. Freeman on Judgments, vol. 2, § 719. The rule is there stated as follows:

"Where two actions involving the same issue or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, re-gardless of which action was begun first. It is the first final judgment, although it may be in the second suit, that renders the matter res judicata in the other suit. . . ."

Said rule was followed in Sewell v. Christison, County Judge, 114 Okla. 177, 245 P. 632; Jackson, Gdn, v. Haney et al., 166 Okla. 13, 25 P. 2d 771; Micco, Gdn, v. Huser, County Judge, et al., 185 Okla. 394, 91 P. 2d 1069; McDougal et al. v. Black Panther Oil Co., 273 Fed. 113; Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 61 L. Ed. 1149.

Affirmed.