**B. E. VAUGHN and Ruth L. Vaughn, husband and wife, Appellees,**

v.

**Don FITZGERALD et al., Appellants.**

**No. 45705.**

Court of Appeals of Oklahoma, Division No. 1.

March 27, 1973.

Rehearing Denied May 8, 1973.

Released by the Supreme Court for Official Publication June 22, 1973.

James M. May, McAlester, for appellees.

Bill Moore, Atoka, for appellants.

ROMANG, Judge:

Appellees, B. E. Vaughn and Ruth Vaughn, filed this suit to quiet title to a 44 acre tract of land including the north 50 feet of an abandoned railroad right-of-way abutting on the south. In the area involved, the right-of-way of U.S. Highway 75, 100 to 150 feet in width, follows along the north side of the railroad right-of-way.

Cross-petitions were filed by appellants claiming title to the entire 100 feet of the abandoned railroad right-of-way by virtue of a Quit Claim Deed from the M.K. & T. Railroad.

The case was submitted upon stipulations and briefs. The trial court found that the M.K. & T. Railroad owned only an easement, and upon abandonment of the right-of-way in 1956, the north 50 feet accreted to the property owners on the north and the south 50 feet accreted to the property owners on the south. The trial court also found that at the time of abandonment, no part of the railroad right-of-way involved, was within the city limits of Atoka, Oklahoma.

Appellants' first proposition for reversal reads as follows:

"Each defendant acquired fee simple title to the strip conveyed to such defendant by the said M.K. & T. Railroad Company."

The basic issue is whether the M.K. & T. Railroad had a fee simple title to the right-of-way or only an easement for railroad purposes.

The stipulation of facts on which the case was submitted appears to be accurately set forth in the answer brief of appellees, as being substantially as follows:

"That the M.K. & T. Railroad Company owned a 100 foot railroad right of way for its branch line that ran in an easterly-westerly direction from Atoka to Lehigh, Oklahoma (it was stipulated that said railroad company acquired their rights therein by Act of Congress of March 2, 1899, 30 Stat. 990. . . . . . that the railroad company abandoned this right of way in 1956, at which time the defendant, Cliftons owned the property abutting said right of way to the south (which had been platted and subdivided in 1918 or 1921 as Oakland Annex Addition to the City of Atoka, Oklahoma, and that the north boundary of said Addition ran to the south boundary of said right of way) and Musler, plaintiffs' immediate predecessor in title, owned the property abutting the right of way to the north; that in 1957 the railroad company conveyed the entire 100 foot right of way by quit claim deed, to the defendant, Cliftons, (from whom all of the other defendants deraigned their title); that in 1959 the City of Atoka extended its city limits, by ordinance, to include the entire abandoned right of way now in question; that in 1963 the defendants, Cliftons, replatted and resubdivided the Oakland Annex Addition to include the entire 100 foot right of way and renamed the same as Parkview Addition, to Atoka, Oklahoma; that in 1965 Musler (owner of plaintiffs' property at the time of abandonment in 1956) conveyed to plaintiffs the 44-acre tract describing the southerly boundary line of plaintiffs' tract . . .

" 'to the north boundary line of the M. K. & T. abandoned right of way . .' "

The deed from the Muslers to the Vaughns also states:

". . . . . subject to the highway right of way."

Each of the allotment patents issued by the Choctaw-Chickasaw Nation covering the property involved, excepted from such grant the land "occupied as right-of-way by the Missouri-Kansas & Texas Railway."

The right to construct the M.K. & T. Railroad was granted by an Act of the General Council of The Choctaw Nation, which was approved on November 8, 1878. Said Act is not in evidence but there is in evidence a copy of the official map showing the route and location of the railroad. The map is dated February 2, 1900, and it was approved by the Department of Interior on March 17, 1900. Inscribed on said map is the following:

". . . . . ; that said line of road was located and constructed by the Missouri, Kansas & Texas Railway Company under authority of an Act of the General Council of the Choctaw Nation, approved November 8, 1878, entitled "An Act to Authorize Coleman E. Nelson and James D. Davis to construct a railroad switch of tramway, and granting the right of way," etc., and this map has been prepared to be filed for the approval of the Secretary of the Interior in accord with his opinion of October 30, 1899, holding the said Railway Company entitled to the benefits of an Act of Congress approved June 28, 1898 entitled "An Act for the Protection of the people of the Indian Territory and for other purposes", and an Act of Congress approved March 2, 1899 entitled "An Act to provide for the acquiring of rights of way by railroad companies through Indian Reservations, Indian Lands and Indian Allotments, and for other purposes"; and that said line was actually located and constructed during the year 1881.

/s/ Henry C. Rouse
President Missouri, Kansas & Texas Railway Company."

In Great Northern Ry. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942) the U.S. Supreme Court said:

"The Act of March 3, 1875 . . ., clearly grants only an easement, and not a fee.

\*     \*     \*     \*     \*     \*

"The Act is to be liberally construed to carry out its purposes . . . But the Act is also subject to the general rule of construction that an ambiguity in a grant is to be resolved favorably to a sovereign grantor—'nothing passes but what is conveyed in clear and explicit language.'"

No clear and explicit language has come to our attention in the Acts involved, which would indicate that the M.K. & T. Railroad received more than an easement for railroad purposes.

In United States v. Drumb, 152 F.2d 821 (10th Cir. 1946) the Federal Circuit Court held:

"Congress had the power to make a disposal of these contingent reversionary interests in railroad rights of way, not only of those which might be abandoned subsequent to the passage of the Act, but also of those where abandonment had occurred prior thereto. In Missouri K. & T. R. Co. v. Roberts, 152 U.S. 114, 14 S. Ct. 496, 497, 38 L.Ed. 377, the Supreme Court points out that while the rights of Indians to their tribal lands arose by treaty, presumably between two sovereign people, as a matter of fact the superior rights to these lands were in the United States for the benefit of the Indians, with power in the government to make such disposal thereof as it saw fit.

\*     \*     \*     \*     \*     \*

". . . It is a general principle of law, adhered to without exception, that when a railroad right of way easement is abandoned, the tract reverts by operation of law and becomes a part of the abutting or adjoining property . . . There is, however, nothing in any of the acts of Congress out of which this right

of way arose which evidences an intent on the part of Congress that this rule of law should not apply to such lands. In the absence of some contrary intimation in some of the acts of Congress dealing with Indian lands, we think the presumption must be that Congress intended that the general rule should apply. Under this rule, upon abandonment of a right of way while the adjoining land was in the Tribe, the strip of land would revert to the abutting property and belong to the Tribe. If in the meantime the Tribe had disposed of the land, it would follow the land. The application of the general rule is in harmony with the declared policy of Congress in passing the Act of 1906, to completely liquidate and dispose of all tribal lands.

\* \* \* \* \* \*

". . . When Congress considered the reversionary interest in railroad rights of way, it recognized the general rule of reverter and accordingly provided that such estates should pass under the general law, with the exception that in cities the right of way should revert to the city."

Appellants further contend that the appellees and their predecessors in title never acquired any title to any of the land outside of the express metes and bounds description, and that all deeds on appellees' land, always described the south boundary thereof as being the "North boundary line of the M.K. & T. Railroad right of way."

Appellants cite Cuneo v. Champlin Refining Co., 178 Okl. 198, 62 P.2d 82 (1936), wherein we find the following:

"The prevailing view in other jurisdictions is that the grantor of land abutting upon a railway who retains in himself no part of the land on either side of the railway property is presumed to have conveyed his interest in the railway property, unless a contrary intention appears or is clearly expressed. A number of reasons have been given for this attitude on the part of the law. They are: That the existence of narrow strips of land distinct in ownership from the adjoining territory would create a prolific source of litigation; that the law favors a construction of instruments which avoids such a situation; that the law will presume the grantor had no intent to retain property then burdened with a railway use and therefore having no immediate value to him; and that the presumption should be indulged because the ownership of the fee under the railway carries with it valuable rights appurtenant to the property expressly conveyed.

\* \* \* \* \* \*

"In the case of Bowers v. Atchison, T. & S. F. Ry. Co., 119 Kan. 202, 237 P. 913, 42 A.L.R. 228, the Supreme Court of Kansas held that a grant of land adjoining a public highway, in which the grantor owned the servient estate, carried with it the fee to the center of the highway, notwithstanding the description in the deed did not mention the highway as a boundary and the specific description by metes and bounds in the deed, carried the grant only to the adjacent boundary line of the highway, . . .

\* \* \* \* \* \*

"We conclude that the conveyance from Knoell to McMechan not only conveyed the 104-acre tract therein specifically described, but it also conveyed by implication the fee burdened with the railway right of way adjacent thereto, thus eliminating the asserted rights of those claiming through Knoell."

■ We are of the opinion that the conveyance of land to the appellees, conveyed by implication the fee to the center of the railroad right of way, notwithstanding the description in the deed by metes and bounds, carried the grant only to "the North boundary line of the M. K. & T. Railroad abandoned right of way."

Appellants also cite Hill v. Cunningham, 329 P.2d 1034 (Okl.1958) wherein the Court said:

"Defendant predicates her right to recover on the rule sometimes denominated

the 'strips and gores' rule. This rule apparently was first found to be applicable in this jurisdiction to a situation involving a railroad right of way in the case of Cuneo v. Champlin Refining Co., 178 Okl. 198, 62 P.2d 82, 83. In that action, as here, the deed by its express provisions did not include the property covered by the right of way. But there, contrary to the situation here, the grantor did not retain property abutting on the right of way.

\* \* \* \* \* \*

"The policy of the law expressed by the rule is the abolition of 'strips and gores' ownership of property except when the intent is plainly contrary to the presumption."

In the instant case the grantors of appellees did not retain property abutting on the right of way, and they did not except or reserve anything to themselves except "one half of the oil, gas and minerals."

■ We are of the opinion that when the railroad abandoned the right of way involved herein, that the north one-half of it reverted by operation of law to the property abutting on the north, and the south one-half reverted by operation of law to the property abutting on the south. The railroad had nothing to convey by Quit Claim Deed.

We have considered the other contentions of the appellants as to the right of way being in the city limits at the time of abandonment, and as to appellants having title by right of adverse possession, and find no merit therein.

Judgment affirmed.

BAILEY, P. J., and BOX, J., concur.