2001 OK CIV APP 67

STATE of Oklahoma, ex rel. COMMISSIONERS OF THE LAND OFFICE, Plaintiff/Appellant,

v.

Rex Allen BRUCE and Sally Bruce; Joe Kretchmar, Jr. and Leona Kretchmar, Trustees of the Joe Kretchmar Revocable Trust; Joe Kretchmar, Jr. and Leona Kretchmar, Trustees of the Leona Kretchmar Revocable Trust; Michael W. McDonald and Michelle McDonald; Harry V. Neufeld Living Trust, Harry V. Neufeld and Freida R. Neufeld, Trustees; Anna Mae Petrik; Algie F. Smrcka Family Trust, Algie F. Smrcka, Trustee; Alice Smrcka; Mariann Smrcka; and Steve Taylor and April Taylor, Defendants/Appellees.

Bank Of Kremlin; Independent School District No. 54 Medford Public Schools; Kenneth Sims and Carolyn Sue Simms; Vestella Lynn Hunter, Defendants.

No. 95,325.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 27, 2001.

Nancy Holsted, Oklahoma City, OK, for Appellant.

Vance T. Nye, Gungoll, Jackson, Collins, Box & Devoll, P.C., Enid, OK, for Appellees Algie F. Smrcka Family Trust, Algie F. Smrcka, Trustee; Alice Smrcka and Mariann Smrcka,

J.C. Drennan, Medford, OK, for Appellees Rex Allen Bruce and Sally Bruce; Joe Kretchmar, Jr. and Leona Kretchmar, Trustees of the Joe Kretchmar Revocable Trust; Joe Kretchmar, Jr. and Leona Kretchmar, Trustees of the Leona Kretchmar Revocable Trust; Michael W. McDonald and Michelle McDonald; Harry V. Neufeld Living Trust, Harry V. Neufeld and Freida R. Neufeld, Trustees; Harry V. Neufeld and Freida R. Neufeld, Trustees of the Freida R. Neufeld Living Trust; Anna Mae Petrik; and Steve Taylor and April Taylor.

JOPLIN, Judge:

¶ 1 Plaintiff/Appellant State of Oklahoma, ex rel. Commissioners of the Land Office (State), seeks review of the trial court's order granting judgment to Defendants/Appellees Rex Allen Bruce and Sally Bruce; Joe Kretchmar, Jr. and Leona Kretchmar, Trustees of the Joe Kretchmar Revocable Trust; Joe Kretchmar, Jr. and Leona Kretchmar, Trustees of the Leona Kretchmar Revocable Trust; Michael W. McDonald and Michelle McDonald; Harry V. Neufeld Living Trust, Harry V. Neufeld and Freida R. Neufeld, Trustees; Harry V. Neufeld and Freida R. Neufeld, Trustees of the Freida R. Neufeld Living Trust; Anna Mae Petrik; Algie F. Smrcka Family Trust, Algie F. Smrcka, Trustee; Alice Smrcka; Mariann Smrcka and Steve Taylor and April Taylor (Defendants) on Defendants' motions for summary judgment in State's action to quiet title in and to approximately 19 acres of an abandoned railway easement located in the City of Medford, Grant County, Oklahoma.[1] In this accelerated review proceeding,[2] State complains the trial court erred as a matter of both law and fact in granting judgment to Defendants.

¶ 2 By the Organic Act of 1890, the United States Congress created the Territory of Oklahoma, and set aside the lands then known as Indian Territory to the Territory, but reserved sections sixteen (16) and thirty-six (36) in every included township "for the purpose of being applied to public schools in the state or states ... to be erected." Organic Act, §§ 1, 18. In about 1898, the Hutchinson & Southern Railway instituted proceedings against the Territory of Oklahoma to condemn property used and occupied by the railway, located, inter alia, in what is now Section 16, Township 27 North, Range 5 West, I.M., Grant County, Oklahoma. By the Enabling Act of 1906, Congress authorized adoption of a constitution

---

1. The claims against Defendants Bank of Kremlin and Independent School District No. 54 Medford Public Schools were resolved by separate orders not subject to review in this proceeding, and the trial court ultimately adjudicated Defendant Vestella Hunter in default.

2. The matter stands submitted on the trial court record under Rule 13(h), Rules for District Courts, 12 O.S. Supp.1993, Ch. 2, App., and Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App.

and creation of the State of Oklahoma, thereby granting the reserved sections in each township to the State. Enabling Act, §§ 1, 7. By Article XI, § 1, of the Constitution of the State of Oklahoma adopted and ratified in 1907:

> The State hereby accepts all grants of land ... made by the United States under the provisions of the Enabling Act, and any other Acts of Congress, for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated.

¶ 3 In 1911, State platted a portion of Section 16–T27N–R5W, I.M., as the College Heights Addition to the Town of Medford, and in the plat identified the property previously set off to the railway and abutting, among others, Blocks 13, 14 and 21 of the Addition. State subsequently sold and conveyed all the lots in those blocks abutting *both sides* of the railway property—without specific reservation of any interest—to one or more of the Defendants or Defendants' predecessors in title.[3]

¶ 4 In about 1993, the Central Kansas Railway, successor in interest to the Hutchinson & Southern Railway, abandoned all of the railway property located in Section 16. In January 2000, State commenced the instant quiet title action, claiming fee simple title to the section 16 property abandoned by the railway as property held in trust pursuant to Art. XI, § 1 of the State Constitution. Defendants answered, denying State's claims to title, and set out counterclaims to quiet title in them.

¶ 5 State subsequently filed a motion for summary judgment, asserting superiority of State's title to the abandoned railway property as a matter of law. That is, said State,

the 1898 territorial condemnation proceedings could not and did not affect a severance of title to the property held in trust for the State, but established only a railroad right-of-way subject to reversion in State's favor upon the railway's abandonment of the property. *See, Williams v. Sowards,* 1950 OK 176, 203 Okla. 245, 219 P.2d 1005; *Missouri-Kansas-Texas R. Co. v. Ray,* 177 F.2d 454 (10th Cir. 1949); *Territory v. Choctaw, O. & W. Ry. Co.,* 1908 OK ——, 20 Okla. 663, 95 P. 420.

¶ 6 The Defendants—jointly or separately—responded, objecting to summary judgment. Either by response to State's motion, or by counter-motions for summary judgment, Defendants asserted that the railway obtained only an easement in the 1898 condemnation proceedings, and that State's subsequent conveyances—without reservation of any interest-transferred all State's right, title and interest to their lots, including the railway easement adjoining their lots, to them or their predecessors. So said Defendants, upon the railway's abandonment of the easement, title to the land underlying the abandoned easement reverted to them. *See, Vaughn v. Fitzgerald,* 1973 OK CIV APP 4, 511 P.2d 1148; *Kassner v. Alexander Drug Co.,* 1943 OK 293, 194 Okla. 36, 147 P.2d 979; *Cuneo v. Champlin Refining Co.,* 1936 OK 540, 178 Okla. 198, 62 P.2d 82.

¶ 7 Upon consideration of the arguments, evidentiary materials and cited authorities, relying on *Vaughn, Kassner* and *Cuneo,* the trial court denied State's motion for summary judgment in all material respects,[4] and granted judgment quieting title to the abandoned railway property in the remaining Defendants.

■ ¶ 8 We first acknowledge the "trust" nature of lands reserved to the State for use by schools. Ok. Const. Article XI, § 1. In recognition of the reservation for school use, the courts in *Choctaw, Ray* and *Williams* uniformly held that by territorial condemnation proceedings, a railroad obtained only an

---

**3.** Either before or after vacation of a part of the original College Heights plat in 1964, and subsequent replat of parts as the Northgate First Addition in 1965.

**4.** The trial court granted State's motion for summary judgment on the claims and counter-claims by and between State and the Defendants Sims, but no issues regarding that ruling are raised in this appeal.

easement, not fee title, to land occupied for railroad purposes, and that accordingly, grantees from the railroad obtained no "absolute or fee simple estate in said property by reason of their claim of title derived from the condemnation proceedings under the territorial statutes." *Williams*, 1950 OK 176, ¶ 9, 219 P.2d at 1007.

¶ 9 However, it does not follow that once impressed with trust status, lands reserved to the State for use by State schools cannot be divested of that status. Indeed, the State, by and through the CLO, may sell and convey unused school lands. Ok. Const. Art. VI, § 32; 64 O.S. §§ 160, 181; *State ex rel. Com'rs of Land Office v. Lamascus*, 1953 OK 339, 263 P.2d 426.

¶ 10 In *Cuneo* sixty-five years ago, the Oklahoma Supreme Court first confronted the issue of title to· abandoned railroad property absent a specific grant or reservation of the interest in the conveyance of abutting property. There, the Supreme Court adopted the prevailing view of other jurisdictions that ordinarily, absent a clear expression of intent otherwise, "the grantor of land abutting upon a railway who retains in himself no part of the land on either side of the railway property is presumed to have conveyed his interest in the railway property." *Cuneo*, 1936 OK 540, ¶ 25, 62 P.2d at 87. The *Cuneo* Court enumerated several reasons for the rule:

> [T]he existence of narrow strips of land distinct in ownership from the adjoining territory would create a prolific source of litigation; that the law favors a construction of instruments which avoids such a situation; that the law will presume the grantor had no intent to retain property then burdened with a railway use and therefore having no immediate value to him; and that the presumption should be indulged because the ownership of the fee under the railway carries with it valuable rights appurtenant to the property expressly conveyed.

1936 OK 540, ¶ 27, 62 P.2d at 87. To avoid the "prolific source of litigation" brought on by " '[t]he evils resulting from the retention in remote dedicators of the fee in gores and strips,' " the Oklahoma appellate courts consequently and consistently hold that absent a clear reservation of interest, the grantor of land abutting both sides of a railroad easement conveys by implication the fee to the center of the railroad right-of-way. *Id.*; *Kassner*, 1943 OK 293, ¶ 7, 147 P.2d at 980; *Hill v. Cunningham*, 1958 OK 189, ¶ 4, 329 P.2d 1034, 1035; *Vaughn*, 1973 OK CIV APP 4, ¶¶ 15, 18, 511 P.2d at 1151, 1152.

¶ 11 Acknowledging this rule of conveyance, State nevertheless argues the rule should not apply in this case. State asserts the evidentiary materials clearly demonstrate State's intent to reserve its interest in the railroad easement upon abandonment. Particularly, State points to the plat of College Heights Addition delineating the railway easement as "exclusive" from the abutting blocks and lots, and the language of the State's deeds described the conveyed lots abutting the railway easement as "inclusive," both of which clearly evince the State's intent to reserve the State's interest in the easement upon abandonment by the railroad. Additionally, says State, given the small size of the lots in relation to the substantially larger 20 acre easement, it is unreasonable to presume State intended to grant its interest in the larger easement tract.

¶ 12 Thus, says State, inasmuch as the subject property was reserved in trust for use by State schools, State's intent to convey its interest in the easement cannot be presumed, but must be clearly expressed in order to convey the railway property. That is, by virtue of the special nature of the State's trust obligation, the general rule does not apply. Accordingly, State argues that any omission of a reservation of its interest from the deeds to the abutting lots can only be attributed to the negligence or ultra vires acts of State's agents, and State's interest cannot be so affected.

¶ 13 We disagree. While Oklahoma law permits the State, by and through the CLO, to absolutely dispose of unused property reserved to the schools in fee, Oklahoma law has also "stated repeatedly ... that the intention [to reserve an interest] *must be observed from the conveyance itself* and that title passes to a disputed strip such as here

involved unless *clearly* set out to the contrary in the deed." *Kassner,* 1943 OK 293, ¶ 17, 147 P.2d at 982. (Emphasis added.) And, "[t]he conveyance of [the] servient estate [burdened by the railway easement] is not excluded by the circumstance that the plat by reference in which the conveyance was made shows the side lines of the property conveyed as stopping at the exterior line of the right of way." *Blake v. Cuneo,* 1941 OK 10, ¶ 0, 188 Okla. 533, 111 P.2d 485. (Court's syllabus.)

¶ 14 In the present case, State, by and through the CLO, platted, sold and conveyed the land abutting the railway easement, although otherwise reserved in trust for the schools, by lots and blocks without mention of the easement or specific reservation of any reversionary interest in the easement. Given the statutory authority granted to the CLO permitting the disposal of lands otherwise reserved for use by State schools, we can see no reason why the ordinary rules of conveyancing should not apply to the State. Neither the terms of the conveyances nor the plat itself so clearly evinces the State's intent to retain a reversionary interest in the railway easement as to avoid the presumption of State's conveyance of all its interest in the lots and blocks abutting the railway easement to include State's interest in the easement upon abandonment. Even assuming State's allegations might amount to an otherwise valid defense if shown, State introduced no evidentiary materials even inferentially supporting the allegation of negligence by or ultra vires act of a State agent.

¶ 15 The order of the trial court granting judgment to Defendants is therefore AFFIRMED.

¶ 16 ADAMS, P.J., and JONES, J., concur.