2011 OK CIV APP 60

**CIMARRON RIVER RANCH, LLC**

v.

**STATE of Oklahoma ex rel. the COMMISSIONERS OF THE LAND OFFICE; Tecelote Limited Partnership d/b/a Tecelote Ranch; Cimarron Trust Estate; and Nye Schumacher Cattle Company, LLC, Defendants/Appellees.**

**No. 107,184.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 15, 2010.

Rehearing Denied Feb. 24, 2011.

Certiorari Denied May 9, 2011.

Sheila D. Stinson, Kirk & Chaney, Oklahoma City, OK, for Plaintiff/Appellant.

Guy L. Hurst, Commissioners of the Land Office, Oklahoma City, OK, for Defendant/Appellee State of Oklahoma ex rel. the Commissioners of the Land Office.

George S. Corbyn, Jr., Cara S. Nicklas, Corbyn Hampton, PLLC, Oklahoma City, OK, for Defendant/Appellee Tecelote Limited Partnership d/b/a Tecelote Ranch and Nye Schumacher Cattle Company, LLC.

JANE P. WISEMAN, Chief Judge.

¶1 Plaintiff Cimarron River Ranch, LLC, appeals from the trial court's orders filed January 22, 2009, and May 8, 2009, granting Defendants'[1] multiple summary judgment motions. This case proceeds pursuant to Supreme Court Rule 1.36, 12 O.S. Supp.2009, ch. 15, app. 1, without additional appellate briefing.[2] We have reviewed the record and applicable law and considered oral arguments presented to the Court by the parties on April 22, 2010. We affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 This dispute involves an October 2005 lease of School Trust land in Cimarron County, Oklahoma. Defendant Commissioners of the Land Office (CLO), an Oklahoma state agency, advertised a public auction for the lease of the land at issue which, at the time, was held by Cimarron Trust Estate (CTE). Plaintiff claims it notified CLO before the auction that CTE was in violation of lease provisions and asked CLO to prohibit CTE from bidding. CLO ignored Plaintiff's request and allowed CTE to bid on additional public lands at the auction. According to Plaintiff, a heated bidding war ensued resulting in Plaintiff's lease of the property at a greatly inflated price.

¶3 During the first year of the five-year lease term, CLO began negotiations with the owners of private property contiguous to the leased property—these owners being CTE, Tecelote Limited Partnership, and Nye Schumacher Cattle Company—to exchange certain portions of the leased property for privately-owned property. After obtaining an appraisal, CLO "exchanged" the School Trust property for the private property in the fall of 2007.

¶4 The exchange, according to Plaintiff, created a landlocked parcel within the lease, limited access of portions of the leased property to water (a basic necessity for cattle ranching), and reduced the overall acreage of the lease. Plaintiff objected to the "exchange" claiming it materially and negatively altered the character of the property it agreed to rent. When CLO refused to reduce the rent on the lease, Plaintiff invoked a lease provision which allowed it to terminate the lease if land under the lease was sold.

1. Because Defendant Cimarron Trust Estate was dismissed with prejudice by Plaintiff on June 19, 2009, the Defendants referred to in this opinion are the State of Oklahoma *ex rel.* the Commissioners of the Land Office and Tecelote Limited Partnership d/b/a Tecelote Ranch and Nye Schumacher Cattle Company, LLC.

2. Plaintiff's motion for additional briefing is denied.

CLO insisted that it had not "sold" the leased property and continued to demand rental payments.

¶ 5 Plaintiff filed suit seeking a declaratory judgment as to its rights under the lease. In its first claim, Plaintiff asks the trial court to determine that a provision in the lease gives Plaintiff the right to terminate the lease as a result of CLO's actions. Plaintiff's third claim also seeks a declaratory judgment holding that the "land exchanges" with private landowners constitute violations of the Oklahoma Enabling Act, Act of June 16, 1906, ch. 3335, 34 Stat. 267, §§ 7–12. If the court does not invalidate the lease, Plaintiff's second claim seeks a declaratory judgment invalidating the land exchanges and giving Plaintiff the right to meet the bid for lands exchanged pursuant to Plaintiff's "preference right to purchase." [3] As to this claim, Plaintiff in the alternative seeks damages it sustained as a result of CLO's denial of its preference right to purchase.

¶ 6 As to Plaintiff's claim that CTE, a lessee of School Trust land, had entered into a sublease with a third party and was not qualified to bid at the auction, CLO claims Plaintiff knew of the possible subleasing and did not inform CLO of its objection in a timely manner. CLO alleges Plaintiff waited until immediately before the bidding began to raise the issue in an attempt to manipulate the auction and chill competitive bidding.

¶ 7 CLO maintains there was no factual dispute about whether the exchange of School Trust land created a landlocked parcel and limited water access on Plaintiff's agricultural lease. CLO asserts Plaintiff failed to demonstrate that the lease was landlocked or that access to water had been limited.

¶ 8 Defendants also assert that Plaintiff failed to establish that it held a preference right to purchase the property pursuant to the Oklahoma Enabling Act. Enacted by the United States Congress on June 16, 1906, the Enabling Act made a grant of lands for the benefit of schools and educational institutions. CLO claims that its exchange of property without first allowing Plaintiff a prefer-

ence right to purchase was proper because the Enabling Act does not include a preference right to purchase the exchanged property under the circumstances presented here.

¶ 9 In the proceedings below, CLO claimed that the land at issue was granted to it by the United States Government by Section 12 of the Enabling Act " 'in lieu' of internal improvements" for the benefit of specified universities. CLO asserts Section 12 does not contain the specific sale and lease restrictions placed on land granted under Sections 7 and 8 of the Act. Sections 7 and 8 grant lands for the support of schools and universities. Section 9 governs the disposal of common school lands and Section 10 governs the sale and lease of university and public institution lands. Section 10 provides a "preference right to purchase." CLO asserts the "in lieu" lands granted under Section 12 are not subject to or bound by these restrictions.

¶ 10 Defendants sought summary judgment as to Plaintiff's three claims. In an order filed January 22, 2009, the trial court granted all pending summary judgment motions. The court specifically granted (1) CLO's motion for summary judgment as to Plaintiff's Count I, (2) CLO's motion to dismiss and motion for summary judgment as to Count II, and (3) CLO's motion to dismiss and motion for summary judgment as to Count III. The court also sustained Defendants Tecelote Limited Partnership and Nye Schumacher Cattle Company, LLC's summary judgment motion as to Plaintiff's Count II. In a subsequent order filed May 8, 2009, the trial court granted CLO's summary judgment motion as to its counterclaim. Plaintiff appeals from these orders.

## STANDARD OF REVIEW

¶ 11 We review a trial court's grant of summary judgment *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears an "affirmative duty ... to test for legal sufficiency all evidentiary material re-

---

3. The "preference right to purchase" is based upon a provision of the Oklahoma Enabling Act.

ceived in summary process in support of the relief sought by the movant." *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106. Further, the evidentiary materials and the inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 1990 OK 43, ¶ 14, 792 P.2d 50, 55.

## ANALYSIS

¶ 12 Because Plaintiff is appealing the trial court's granting of Defendants' five summary judgment motions, we will address each motion as it correlates to the parties' claims.

### I. *Plaintiff's Count 1: Exchange as Sale*

¶ 13 In reviewing the summary judgment entered on Count I, CLO as the movant has the burden to show those facts that are "material to its claim and to show the absence of any factual dispute of the facts material to the claim or defense." *Cinco Enters., Inc. v. Benso,* 1994 OK 135, ¶ 12, 890 P.2d 866, 871. "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a claim or defense." *Id.* "The party opposing the motion, in order to prevail, may file a written statement containing the material facts which show a genuine issue exists and attach affidavits and other evidentiary materials which would be admissible at trial in support of these facts." *Buckner v. General Motors Corp.,* 1988 OK 73, ¶ 28, 760 P.2d 803, 812.

■ ¶ 14 The question presented in CLO's motion is whether an "exchange" of real property is the equivalent of a "sale" of real property so as to activate provision 2.4 of the lease giving Plaintiff the option to terminate the lease. This provision states:

2.4 Sale of Land/Commercial Development.

CLO reserves and excepts the right to sell or commercially develop all or part of leased premises. If all of leased premises is sold or taken for commercial purposes, this lease shall terminate and Lessee shall deliver possession of premises to CLO as notified. If part of leased premises is sold or commercially developed, Lessee shall deliver possession of premises to CLO as notified. CLO agrees to reduce annual rental proportionately in relation to original appraisal of surface retained by Lessee for remainder of lease term or, at the option of the Lessee, lease shall terminate. Adjustment in annual rental will be made only if amount exceeds twenty-five ($25.00) dollars.

CLO argues that an "exchange" of real property is not the same as a "sale" of real property and this provision was not activated by an exchange.

¶ 15 In order to obtain summary judgment, CLO was required to include a statement of material facts with supporting evidentiary materials establishing no substantial controversy existed as to the material facts. The uncontroverted material facts CLO delineates in support of its argument that an exchange should not constitute a sale of property are as follows: [4]

2. All exchanges were acre for acre exchanges, regardless of value as long as the property received was equal or greater than the property given by the CLO.

3. When performing an exchange of property and fulfilling the CLO trust management mandate and the language of the statute, the CLO is required to get appraisals determining the market value of the property to insure the CLO is receiving land of equal or greater value.

4. The first exchange performed was on Ranch Unit 7506:

- The exchange was approved by the Commissioners on June 8, 2006.
- The exchange was 40 acres of the total 3840.14 acres.
- The deeds were filed on or about October 23, 2006.
- The market values of the land exchanged and received [were] equal and established at $8,000.00 total for each tract.

5. The second exchange performed was on Ranch Unit 7504:

---

**4.** Footnoted citations to the record have been omitted for each fact identified herein.

- The exchange was approved by the Commissioners on April 17, 2007.
- The exchange involved 932.2 acres of the total 7090.66 acres.
- The deeds were filed on or about September 28, 2007.
- The market value of the CLO land to be exchanged was established at $250.00 per acre and the market value of the land to be received in the exchange was established at $340.00 per acre.

6. The third and last exchange was performed on Ranch Unit 7505:

- The exchange was approved by the Commissioners [on] June 13, 2007.
- The exchange involved 507.8 acres of the total 6,295.28 acres.
- The deeds were filed on or about September 28, 2007.
- The market value of the CLO land to be exchanged was established at $250.00 per acre and the market value of the land to be received in the exchange was established at $340.00 per acre.

¶ 16 CLO presents this evidence to support its argument that it "does not recognize an exchange of real property to be the same as the sale of real property, since [it] still owns the same amount of acreage. Further, [CLO] does not consider provision 2.4 to be activated by an exchange since the resulting leases are better in value and all lands received are either surrounded by the CLO land leased by Plaintiff or are continguous [*sic* ] to CLO land leased by Plaintiff."

¶ 17 CLO next asserts the law recognizes a difference between an exchange and sale. CLO states that the "Oklahoma Legislature also believes an exchange is different than a sale" because it created two separate statutory procedures for entering into exchanges or sales of land–64 O.S. Supp.2009 § 1.3 (exchanges) and 64 O.S.2001 §§ 1.1, 181–196 (sales). Title 64 O.S. Supp.2009 § 1.3(B) [5] states:

The Commissioners of the Land Office may exchange any real property of the

trust for any other real property of equal or greater value, in accordance with and under the safeguards of trust requirements and to maximize income.

CLO also asserts the Oklahoma Constitution authorizes it to conduct exchanges by giving it authority to manage school lands. Okla. Const. Art. VI, § 32(A).

¶ 18 According to CLO, the Legislature's statutory authorization for CLO to conduct exchanges is not prohibited by Section 12 of the Oklahoma Enabling Act. According to CLO, "Section 12 was land conveyed to CLO 'in lieu' of internal improvements Acts, specifically 43 U.S.C. §§ 857, 982–984" which "grant certain rights to states." Thus, "[t]he lands granted by Section 12 of the Enabling Act are specifically 'in lieu' of the grants and rights available under these federal statutes." CLO argues Section 12 of the OEA therefore does not prohibit exchanges of lands received "in lieu" of internal improvements.

¶ 19 In both its response and amended response to CLO's motion, Plaintiff presents evidence disputing CLO's position that an exchange of property is not a sale of real property. Plaintiff cites the deposition testimony of Keith Kuhlman, Director of Real Estate Management for CLO, in support of its argument that CLO treats an exchange the same as a sale:

Q. When you "exchange land," how do you transfer title?

A. We receive a warranty deed from the individuals that we're trading for, and we convey it by patent.

Q. Same as if it was a sale; right?

A. Yes, sir.

Keith Kuhlman further testified that these patents do not distinguish between a conveyance by land exchange or a conveyance by sale and when looking at a land patent, he cannot tell whether it is exchanged or sold. The patents themselves state that "the full amount of the purchase price ... has been paid," the grantee "is entitled to a patent," and the Commissioners "[g]rant, [s]ell and

5. Although CLO cites 64 O.S.2001 § 1.2(C) in its summary judgment motion, it later recognized and stated in its reply to Plaintiff's response that it meant to cite 64 O.S. Supp.2009 § 1.3(B).

[c]onvey" fee simple title to the property as described.

¶ 20 Plaintiff further cites three letters disputing that CLO exchanged land for equal or greater value.[6] The letter of November 8, 2007 from Plaintiff states:

> Our manager and others are absolutely not of the opinion that the re-configuration of the above leases by CLO has resulted in either maintaining the usable quality of the land or provided easier access for management of the property, but conversely so.

The usable quality of land can impact the value of the land. Plaintiff also cites Keith Kuhlman's deposition testimony that not all land is worth the same for purposes of determining whether an exchange is for equal or greater value:

> Q. Well, you say you swap acre for acre?
> A. Yes, sir.
> Q. So if you give away five acres, you take back five acres?
> A. Yes, sir.
> Q. Is all land worth the same?
> A. No.
> Q. So what happens if you're giving up five acres that's worth $10,000 and you're getting five acres that's worth $5,000?
> A. We would not make that trade. We can only trade for equal value or above and for—for any land exchange that we do.
> Q. Okay. How do you make that determination?
> A. Appraisals.

¶ 21 Plaintiff further argues that an exchange is the same as a sale pursuant to the Oklahoma Enabling Act and the Oklahoma Constitution. Citing an Arizona Supreme Court case, *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 790 P.2d 242, 246 (1990), Plaintiff contends that an exchange can be construed as a sale if a fixed value is placed on the property. Because CLO placed a fixed value on the land by appraisal as required by Oklahoma Administrative Code 385:25–1–41, Plaintiff argues "[a]ll exchanges by the CLO are sales." According to Plaintiff, "[s]uch exchanges where land is given a value are sales disguised as exchanges of

property because the lands are given value before the parties are willing to participate in the transaction." Plaintiff asserts, however, that if an exchange is not the same as a sale, then the land exchange allowed by 64 O.S. Supp.2009 § 1.3 would be in direct conflict with the Enabling Act and the Oklahoma Constitution because they do not allow the State or CLO to exchange property granted by the Enabling Act.

¶ 22 We find summary judgment in favor of CLO as to Plaintiff's Count I to be improper. The material facts set forth above regarding whether the transaction constitutes a sale of real property and, if an exchange, whether the value of the exchanged lands is equal to or greater than the land received, are still in dispute and summary judgment should not have been granted. With such contradictory evidence, there are material facts in dispute as to whether provision 2.4 was activated, facts which preclude summary judgment.

■ ¶ 23 "Although in its consideration of a motion for summary judgment the trial court considers factual matters, it ultimately must decide entitlement to judgment as a matter of law *after* it decides that it is clear there are no disputed material-fact questions." *Winston v. Stewart & Elder, P.C.*, 2002 OK 68, ¶ 9, 55 P.3d 1063, 1067 (footnote omitted and emphasis added). If, when considering the evidentiary materials (even if undisputed), reasonable minds might reach different conclusions, summary judgment is inappropriate. *Id.* at ¶ 10, 55 P.3d at 1067. We conclude Defendant CLO was not entitled to judgment as a matter of law as to Plaintiff's Count I because material disputed fact questions and the conclusions to be drawn from them remain. The decision of the trial court on this issue is reversed and remanded for further proceedings.

*II. Plaintiff's Count II: Preference Right To Purchase*

*Defendant CLO's Motion for Summary Judgment*

■ ¶ 24 The questions presented in CLO's motion addressed to Count II are

---

**6.** Letter to Samuel James Parker from Keith Kuhlman dated October 30, 2007, letter to Samuel James Parker from Perry E. Kaufman dated November 13, 2007, and letter to Keith Kuhlman from Samuel James Parker dated November 8, 2007.

whether Plaintiff as a lessee had a preference right to purchase the property that was the subject of the "exchange" and whether CLO violated that right. Plaintiff claimed economic damages and lost opportunity as a result of CLO's actions.

¶ 25 In its motion, CLO claimed the following material facts were not in controversy: (1) Plaintiff filed its action against CLO on December 12, 2007; (2) Plaintiff alleges the property that was exchanged is subject to a preference right to purchase, CLO had knowledge of this right, and CLO violated this right; (3) CLO owned and exchanged 507.8 acres, more or less, with Nye Schumacher, 832.3 acres, more or less, with Cimarron Trust Estate, and 40 acres with Tecelote Ranch; (4) the land CLO exchanged had been granted to it pursuant to Section 12 of the Enabling Act; (5) none of the properties exchanged had a preference right to purchase; (6) Plaintiff asked for damages in its petition; and (7) no tort claim has been received by the Department of Central Services on behalf of CLO.

¶ 26 CLO argues that the land at issue was granted to it under Section 12 of the Enabling Act, which CLO claims contains no preference right to purchase provision. CLO also asserts Plaintiff's request for money damages is covered by the Governmental Tort Claims Act (GTCA), 51 O.S.2001 & Supp.2009 §§ 151–200.

¶ 27 In response, Plaintiff admits CLO's statement of material facts except for CLO's claims that there is no preference right to purchase and that the GTCA covers Plaintiff's claims against CLO. Plaintiff argues CLO obtained the land pursuant to Section 12 of the Enabling Act " 'in lieu of the grant of land for purposes of internal improvements made to new States' " by Section 8 of the Enabling Act. Plaintiff claims "Section 12 property acquired 'in lieu of' other lands was intended to ensure the State of Oklahoma ... received the full amount of land grants from the United States free of encumbrances and 'internal improvements made to new States' " under Section 8 of the Act.

¶ 28 Sections 7 and 8 of the Enabling Act grant lands for the support of schools and universities. Section 9 governs the disposal of common school lands and Section 10 governs the sale and lease of university and public institution lands. Section 10 provides a "preference right to purchase." Plaintiff claims that as held in *Oklahoma Education Association v. Nigh*, 1982 OK 22, 642 P.2d 230, the Act should be read as a whole: "When reading the [Enabling Act] as a whole act, Section 12 is a supplement to the whole and should be given the same consideration as [Sections] 7–10 of the [Enabling Act]." Plaintiff argues CLO is in error in claiming Section 12 should be read in isolation.

¶ 29 Plaintiff also denies its claim against CLO is governed by the GTCA. Its claim for relief as to the preference right to purchase, according to Plaintiff, is a claim for breach of contract relating to the leases between the parties which is a dispute outside the scope of the GTCA.

### Defendants Tecelote and Nye Schumacher's Motion for Summary Judgment

¶ 30 In their motion for summary judgment in which they argue Plaintiff is not a preference right lessee, Tecelote and Nye Schumacher allege the material facts as summarized below are undisputed:

In November 2005, CLO approved Plaintiff's bid on three ranch units which include ten agricultural leases. All three leased ranch units are located in Cimarron County. One lease contains 7090.66 acres, the second contains 6295.28 acres, and the third contains 3840.14 acres. CLO entered into an exchange of property with Nye Schumacher in 2007, pursuant to which Nye Schumacher exchanged 507.8 acres of its property for 507.8 acres, more or less, of CLO property that was under lease to Plaintiff.

CLO entered into an exchange of property with Tecelote in September 2006 in which Tecelote exchanged approximately 40 acres for CLO property that was under lease to Plaintiff.

The properties exchanged by CLO with Nye Schumacher and Tecelote were acquired by the State of Oklahoma pursuant to Section 12 of the Enabling Act.

Nye Schumacher and Tecelote asserted that the court need only look to Section 12 to determine whether Plaintiff has a preference right to purchase.

¶ 31 The main question presented by Defendants' motions for summary judgment is whether Section 12 grants Plaintiff a preference right to purchase the land at issue. As discussed previously, the Enabling Act granted lands for the benefit of schools and educational institutions. It is undisputed that the leased lands at issue here were granted pursuant to Section 12 of the Enabling Act, which provides the following:

> That in lieu of the grant of land for purposes of internal improvement made to new states by the eighth section of the Act of September fourth, eighteen hundred and forty-one, which section is hereby repealed as to said State, and in lieu of any claim or demand of the State of Oklahoma under the Act of September twenty-eighth, eighteen hundred and fifty, and section twenty-four hundred and seventy-nine of the Revised Statutes, making a grant of swamp and overflowed lands, which grant it is hereby declared is not extended to said State of Oklahoma, the following grant of land is hereby made to said State from public lands of the United States within said State, for the purposes indicated, namely: For the benefit of the Oklahoma University, two hundred and fifty thousand acres; for the benefit of the University Preparatory School, one hundred and fifty thousand acres; for the benefit of the Agricultural and Mechanical College, two hundred and fifty thousand acres; for the benefit of the Colored Agricultural and Normal University, one hundred thousand acres; for the benefit of normal schools, now established or hereafter to be established, three hundred thousand acres. The lands granted by this section shall be selected by the board for leasing school lands of the Territory of Oklahoma immediately upon the approval of this Act. Said selections as soon as made shall be certified to the Secretary of the Interior, and the lands so selected shall be thereupon withdrawn from homestead entry.

Other sections dealing with land grants for schools, colleges, and universities are Sections 7, 8, 9, and 10. Section 7 of the Enabling Act provides, "That upon the admission of the State into the Union sections numbered sixteen and thirty-six, in every township in Oklahoma Territory and all indemnity lands heretofore selected in lieu thereof, are hereby granted to the State for the use and benefit of the common schools." This provision does not apply to Indian and military reservations and other areas specified in the Act.

¶ 32 Section 8 of the Enabling Act states, in part, the following:

> That *section thirteen* in the Cherokee Outlet, the Tonkawa Indian Reservation and the Pawnee Indian Reservation ... and *section thirteen* in all lands which have been or may be opened to settlement in the Territory of Oklahoma, and all lands heretofore selected in lieu thereof, is hereby reserved and granted to said State for the use and benefit of the University of Oklahoma and the University Preparatory School, one-third: of the normal schools now established or hereafter to be established, one-third; and of the Agricultural and Mechanical College and the Colored Agricultural Normal University, one-third: The said lands or the proceeds thereof as above apportioned shall be divided between the institutions as the Legislature of said State may prescribe: Provided, That the said lands so reserved or the proceeds of the sale thereof shall be safely kept or invested and held by the said State and the income thereof, interest, rentals or otherwise, only shall be used exclusively for the benefit of said educational institutions.

(Emphasis added.) Section 8 further mandates that the educational institutions must remain under the exclusive control of the State and that no lands or money derived from the lands may be used to support any religious school, college, or university. Section 8 also provides, "That section thirty-three, and all lands heretofore selected in lieu therefore, heretofore reserved under said proclamation, and Acts for charitable and penal institutions and public buildings,

shall be apportioned and disposed of as the legislature of said State may prescribe."

¶ 33 Section 9 establishes the preference right to purchase of a lessee for common schools land. Section 9 states the following:

That said sections sixteen and thirty-six, *and lands taken in lieu thereof,* herein granted for the support of the common schools, if sold, may be appraised and sold at public sale in one hundred sixty acre tracts, or less, under such rules and regulations as the Legislature of the said State may prescribe, *preference right to purchase at the highest bid being given to the lessee at the time of such sale,* the proceeds to constitute a permanent school fund the interest of which only shall be expended in the support of such schools. But said lands may, under such regulations as the Legislature may prescribe, be leased for periods not to exceed ten years; and such lands shall not be subject to homestead entry or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only.

(Emphasis added.) Section 9 therefore encompasses lands in Sections 16 and 36 granted for the benefit of common schools and lands selected in lieu thereof.

¶ 34 Section 10 provides for sales and leases of university and public institution lands.

That said sections thirteen and thirty-three aforesaid, if sold may be appraised and sold at public sale, in one hundred sixty acre tracts or less, under such rules and regulations as the Legislature of said State may prescribe, *preference right to purchase at the highest bid being given to the lessee at the time of such sale,* but such lands may be leased for periods of not more than five years, under such rules and regulations as the Legislature may prescribe. . . .

(Emphasis added.) Continuing, Section 10 lays out requirements for land sold under its provisions. Although Section 10 grants a preference right to purchase, it covers only Sections 13 and 33 lands. Section 10 does not address "in lieu" lands as Section 9 does.

¶ 35 It is clear that Section 12 addresses lands granted "in lieu" of swamp and over-flowed lands. Section 12 actually has no provision for the sale or lease of land granted thereunder. CLO, Tecelote, and Nye Schumacher assert that Section 12 gives no preference right to purchase because such a provision is not directly mandated by the terms of Section 12.

¶ 36 Section 12 lands are granted for the use of Oklahoma University, the University Preparatory School, the Agricultural and Mining College, the Colored Agricultural and Normal University, and normal schools. Although these schools are the same schools addressed in Section 8 of the Enabling Act, different lands are granted by each provision. In Section 10, the Act gives the State the right to sell the lands granted under Section 8. Section 10 also grants a preference right to purchase to a lessee. However, in contrast with Section 9 governing common schools, which specifically addresses "in lieu" lands, Section 10 does not do so.

¶ 37 In its reply to Plaintiff's response, CLO claims "no limitations by the federal government were placed upon the disposition of the lands granted by Section 12 of the Oklahoma Enabling Act." CLO says that because the federal government placed no limitations on the disposition of Section 12 lands, the Legislature has the power to authorize CLO to conduct the land exchanges in question. CLO cites 64 O.S. Supp.2004 § 1.3(B), which states, "The Commissioners of the Land Office may exchange any real property of the trust for any other real property of equal or greater value, in accordance with and under the safeguards of trust requirements and to maximize income."

¶ 38 In *Magnolia Petroleum Co. v. Price,* 1922 OK 99, ¶ 0, 86 Okla. 105, 206 P. 1033, 1033 (syl. no. 4 by the Court), the Supreme Court stated:

The grant of lands, to wit, sections 16 and 36 for common school purposes, section 13 for the support of higher institutions of learning, and section 33 for the purpose of public building, and the acceptance of such lands by the state by express provision of the Constitution, constituted a complete contract and compact between the government of the United States and

the state of Oklahoma, and supersedes all previous acts, rules, and regulations in conflict therewith.

The Court commented that Sections 7, 8, 9, and 10 of the Enabling Act "constitute all the conditions imposed upon the state" in regard to land granted pursuant to these provisions of the Act. *Id.* at ¶ 22, 206 P. at 1038. This case involved the rights of an agricultural lessee of Section 33 land. The Court found there was "no hint in any of said sections [8, 9, or 10], nor in all of them construed together, that the state, unless it elected to do so, was compelled to sell any of said lands." *Id.*

¶ 39 Article 11, Section 4 of the Oklahoma Constitution provides:

All public lands set apart to the State by Congress for charitable, penal, educational, and public building purposes, and all lands taken in lieu thereof, may be sold by the State, under such rules and regulations as the Legislature may prescribe, in conformity with the regulations of the Enabling Act.

The *Magnolia* Court noted however, that the State was not required to sell the lands. *Magnolia,* 1922 OK 99 at ¶ 22, 86 Okla. 105, 206 P. at 1038. However, it is well settled that "the State, by and through the CLO, may sell and convey unused school lands." *State ex rel. Comm'rs of the Land Office v. Bruce,* 2001 OK CIV APP 67, ¶ 9, 25 P.3d 953, 956. Article 11, Section 5 of the Constitution addresses Section 13 lands and provides:

Section thirteen in every portion of the State, which has been granted to the State, shall be preserved for the use and benefit of the [universities, colleges, and schools]. The said lands or the proceeds thereof as above apportioned to be divided between the institutions as the Legislature may prescribe: Provided, That the said lands so reserved, or the proceeds of the sale thereof, or of any indemnity lands granted in lieu of section thirteen shall be safely kept or invested and preserved by the State as a trust, which shall never be diminished, but may be added to, and the income thereof, interest, rentals, or otherwise, only shall be used exclusively for the benefit of said educational institutions. Such educational institutions shall remain under the exclusive control of the State and no part of the proceeds arising from the sale or disposal of any lands granted for educational purposes, or the income or rentals thereof, shall be used for the support of any religious or sectarian school, college, or university, and no portion of the funds arising from the sale of sections thirteen or any indemnity lands selected in lieu thereof, either principal or interest, shall ever be diverted, either temporarily or permanently, from the purpose for which said lands were granted to the State.

¶ 40 CLO and Tecelote and Nye Schumacher maintain that Section 12 does not contain a preference right to purchase. After reviewing the Enabling Act, we agree. Plaintiff urges the Court to read Sections 7 through 10 and Section 12 of the Enabling Act as a whole to conclude that there is a preference right to purchase under Section 12. After reviewing all of these sections, we must conclude that Section 12 lands are not to be treated in the same manner as those granted under Sections 7 and 8. Congress did not include "in lieu" lands in Section 10 when setting out the restrictions placed on the sale of Sections 13 and 33 lands which are to be used for universities, colleges, certain schools, charitable and penal institutions, and public buildings. Congress did include "in lieu" lands acquired instead of Sections 16 and 36 lands when setting out the restrictions for lands granted for common schools.

¶ 41 The lack of a preference right to purchase Section 12 lands was recognized by the Oklahoma Legislature in Compiled Laws of Oklahoma, 1909, chapter 94, article 6. Section 7478(b) of chapter 94, article 6 states:

Any lessee holding a lease on any of the lands described in section 1 of this Act [7476], except New College lands, shall have the preference right to purchase one hundred and sixty (160) acres so leased at the highest bid at the time of the sale of the same as hereinafter provided in this bill: *Provided, further,* that none of the lands enumerated in section 1 of this Act, [7476], *except the lands that bear no preference right which were secured under and by virtue of section 12 of the Enabling*

*Act,* which is under lease to any person or persons holding a lease on more than one hundred and sixty acres, on which he may claim a preference right of purchase, shall be sold until such lessee shall file a written waiver of his preference right to purchase any of such land so leased, except one hundred and sixty acres, with the Commissioners of the Land Office, and the said Commissioners shall reserve the same from sale until such waiver is so filed, and the purchaser shall accept said land with condition of such waiver.

(Emphasis added.) Section 7476 provides, in part, "The Commissioners of the Land Office shall dispose of, sell, and convey, subject to" the provisions of the Enabling Act "[a]ll lands owned by this State, reserved, granted, and taken in lieu of sections numbered sixteen (16), thirty-six (36), thirteen (13), and thirty-three (33) and known as Indemnity Lands...."

¶ 42 Clearly, Section 12 lands were originally thought not to include a preference right to purchase. Plaintiff traces a revision of Section 7478(b) (Revised Laws 1910, chapter 69, article 1, section 7147) through to a current statute 64 O.S.2001 § 184, which provides, "Any lessee holding a preference right lease on any of the lands described in the first section of this article, same being Section 33 and indemnity shall have the preference right to purchase all of the lands so leased by him at the highest bid at the time of the sale, or in case of no bid, then to take the same at the appraised value." Plaintiff notes the changes in the law and declares that the Legislature removed the prohibition against the preference rights of lessees.

¶ 43 We must reject Plaintiff's argument in this regard. The lack of the preference right was mandated not by the Oklahoma Legislature, but by Congress in the Enabling Act. The 1909 Oklahoma law merely acknowledges there is no preference right under Section 12 of the Enabling Act. Based on these factors, there is no preference right for a lessee of Section 12 lands. We affirm the trial court's grant of Defendants' motions as to Plaintiff's Count II.

■ ¶ 44 CLO also argues that Plaintiff's claims against it must be dismissed because it did not comply with the GTCA. Based on our review of the record and the arguments presented, Plaintiff was not required to comply with the GTCA because its action was based on leases of land from CLO. *See Apache Corp. v. State ex rel. Comm'rs of the Land Office,* 1992 OK CIV APP 67, 845 P.2d 1281 (GTCA did not apply to contract/quiet title action brought by corporation that leased land from CLO).

*III. Plaintiff's Count III: Violations of the Enabling Act*

*Defendant CLO's Motion for Summary Judgment*

■ ¶ 45 The question presented in Count III is whether CLO violated the Enabling Act or breached its leases with Plaintiff when it entered into "land exchanges" with private landowners in Cimarron County. Plaintiff claimed money damages as a result of CLO's actions. CLO presented the following "Material Facts not in Controversy": (1) Plaintiff filed its amended petition against CLO on June 13, 2008; (2) in the amended petition, Plaintiff alleged CLO violated the Enabling Act, prayed for money damages, and asked the court for a declaratory judgment finding the land exchanges are invalid; and (3) no tort claim made pursuant to the GTCA was ever received by the Department of Central Services.

¶ 46 In its response, Plaintiff admits CLO's facts but argues that its claims are not covered by the GTCA because they are based on the leases between CLO and Plaintiff. We agree. Based on our discussion above, Plaintiff's claims assert breach of the leases and are therefore not governed by the GTCA.

¶ 47 In regard to CLO's claim that Plaintiff failed to show CLO violated the Enabling Act by exchanging lands with private landowners, including Tecelote and Nye Schumacher, we find that summary judgment was not properly granted. Although we find Section 12 does not impose specific restrictions on the way in which CLO may dispose of property granted pursuant to Section 12, this does not end our inquiry. There is a " 'trust' nature of lands reserved to the State for use by schools." *Bruce,* 2001 OK CIV APP 67, ¶ 8,

25 P.3d at 955. CLO acts as trustee of the school lands for the State, *see e.g.* 64 O.S. 2001 § 1.1, and as a result has certain obligations concerning these lands. Section 12, then, may not be the only consideration when examining CLO's duties under the Enabling Act.

¶ 48 The resolution of Plaintiff's Count III rests on the resolution of Count I, determining the nature of the transactions at issue, whether an exchange constitutes a sale. We have concluded that material facts regarding the nature of the transactions remain in dispute and require resolution, disputed facts which preclude summary judgment on Plaintiff's Count I. Similarly, we conclude that Plaintiff's Count III, whether Plaintiff is entitled to damages for CLO's alleged violations of the Enabling Act and the lease, cannot be determined until the issue of whether the transactions were sales or exchanges is resolved. Accordingly, we find the trial court erred in granting summary judgment on Plaintiff's Count III.

*IV. CLO's Motion for Summary Judgment on its Counterclaim*

¶ 49 CLO filed a counterclaim alleging Plaintiff breached the leases by failing to pay annual rent. After the trial court granted summary judgment to CLO on Plaintiff's claims, CLO filed another motion seeking summary judgment on its counterclaim. In this motion, CLO alleged Plaintiff breached the leases by failing to pay rents thereby entitling CLO to judgment for the contractual amounts due. The trial court granted CLO's motion finding Plaintiff breached the lease contracts "with the CLO by failing to pay the rents due on the agreements and the CLO is entitled to a judgment for the full contractual amount due." The trial court then determined CLO's damages, found CLO's mitigation was timely and proper, and applied the mitigation amounts to the damages. Plaintiff alleges the trial court erred (1) in finding it breached the lease, (2) in assessing damages, and (3) in declaring CLO properly and timely mitigated damages.

¶ 50 For the reasons identified in Part III above, we find CLO's motion for summary judgment as to its counterclaim cannot be determined until a finding has been made regarding whether the transaction constituted a sale. The trial court's May 8, 2009, order granting CLO's motion for summary judgment on its counterclaim is therefore reversed and remanded.

### CONCLUSION

¶ 51 We find the trial court (1) erred in granting summary judgment to CLO as to Plaintiff's Count I, (2) properly granted Defendants' summary judgment motions as to Plaintiff's Count II, (3) erred in granting summary judgment as to Plaintiff's Count III, and (4) erred in granting CLO's summary judgment motion as to its counterclaim. The trial court's order as to Count II is affirmed; its remaining orders as to Plaintiff's Counts I and III and CLO's counterclaim are reversed and remanded for further proceedings.

¶ 52 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, P.J., and BARNES, J., concur.